Alfred Yvon LeTOURNEUR, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 75–1967.

United States Court of Appeals,
Ninth Circuit.

June 18, 1976.

Barbara K. Ratliff (argued), Legal Aid Society of Hawaii, Honolulu, Hawaii, for petitioner.

Lawrence W. Chamblee (argued), Crim. Div., Dept. of Justice, Washington, D.C., for respondent.

## OPINION

Before BROWNING and TRASK, Circuit Judges, and KING,* District Judge.

TRASK, Circuit Judge:

This is an appeal from a decision of the Board of Immigration Appeals which upheld the Immigration and Naturalization

* Honorable Samuel P. King, United States District Judge, District of Hawaii, sitting by designation.

Service's order to deport the petitioner-appellant, Alfred Yvon LeTourneur.

Appellant was brought by his father to the United States from France as a child of four on September 23, 1939. Although his father later became a naturalized citizen, LeTourneur has remained a resident alien. He asserts in his brief that he was unaware or unsure of his alien status and that he never complied with annual alien registration requirements.[1] Appellant served in the United States Marine Corps for eight years and was honorably discharged in 1958; those discharge papers showed that he was not a United States citizen in 1958. He moved to Honolulu following his discharge and married but was divorced in 1971. He has two children from a common law marriage which he supported prior to his incarceration.

On March 13, 1973, LeTourneur was convicted in Hawaii state court along with seven others of an armed robbery, of jewelry, after a plea of not guilty. The robbery took place on May 3, 1972. On March 28, 1973, he was convicted, after a plea of guilty, of second-degree robbery. The indictment charged robbery with firearms, of money, on April 28, 1972. Some, but not all, of those convicted for the earlier robbery were indicted for the second crime. Also, one not indicted for the first crime was indicted for the second crime.

LeTourneur was served by the Immigration and Naturalization Service (INS) while he was in state prison with an order to show cause why he should not be deported. A hearing was held at the prison before an immigration judge. Appellant's counsel there conceded that he fell within the deportability provisions of 8 U.S.C. § 1251(a)(4).[2] He made no contention that the two separate robberies did not constitute grounds for deportation under the statute. The immigration judge found appellant deportable and not eligible for suspension of deportation under 8 U.S.C. § 1254(a)(2).[3] The appeal of the order of

---

1. The record at pages 45 and 46 contains an Alien Registration Form filed under the name of Alfred Yvon LeTourneur, bearing the purported signature of Alfred Yvon LeTourneur, whose signature was in turn certified by the signature of a registering official. The certification date was March 6, 1952. There was no testimony regarding this document.

2. 8 U.S.C. § 1251(a)(4), provides:
"Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

. . . . .

"(4) is convicted of a crime involving moral turpitude committed within five years after entry and either sentenced to confinement or confined therefor in a prison or corrective institution, for a year or more, *or who at any time after entry is convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct,* regardless of whether confined therefor and regardless of whether the convictions were in a single trial;" (Emphasis added.)
8 U.S.C. § 1252(b), provides in pertinent part:
"A special inquiry officer shall conduct proceedings under this section to determine the deportability of any alien, and shall administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and, as authorized by the Attorney General, shall make determinations, including orders of deportation. . . . . No

special inquiry officer shall conduct a proceeding in any case under this section in which he shall have participated in investigative functions or in which he shall have participated (except as provided in this subsection) in prosecuting functions."

3. 8 U.S.C. § 1254(a)(2), provides in pertinent part:
"As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

. . . . .

"(2) is deportable under paragraphs (4), (5), (6), (7), (11), (12), (14), (15), (16), (17), or (18) of section 1251(a) of this title; has been physically present in the United States for a continuous period of not less than ten years immediately following the commission of an act, or the assumption of a status, constituting a ground for deportation, and proves that during all of such period he has been and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in exceptional and extremely unusual hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

deportation was dismissed by the Board of Immigration Appeals, and a timely Petition for Review was filed.

The issues petitioner-appellant brings to us are as follows:

(1) Whether the hearing before the immigration judge was a violation of procedural due process in that it was not conducted before an impartial tribunal?

(2) Whether the facts disclosed here constitute an infringement of due process, double jeopardy, and cruel and unusual punishment and thus violate the Fifth and Eighth Amendments to the Constitution?

(3) Whether the government sustained its burden of proof to establish that appellant's two convictions did not arise out of a single scheme of criminal misconduct?

■■■ The first contention is patently without merit. 8 U.S.C. § 1252(b), specifically authorizes the multiple roles of the special inquiry officer to "administer oaths, present and receive evidence, interrogate, examine, and cross-examine the alien or witnesses, and . . . shall make determinations, including orders of deportation." That this dual role of the special inquiry officer is fair and proper under established standards of due process is clear. *Hosseinmardi v. INS,* 405 F.2d 25, 27–28 (9th Cir. 1969). The separate contention that because the officer is under the supervision of Immigration and Naturalization Service officers who perform prosecuting and investigative functions, due process may be violated, is also without merit. *Marcello v. Bonds,* 349 U.S. 302, 311, 75 S.Ct. 757, 99 L.Ed. 1107 (1955). Moreover, as the INS points out, the fairness of the proceeding was not raised below and should not be properly considered here. *Frommhagen v. Klein,* 456 F.2d 1391, 1395 (9th Cir. 1972).

■■■ The contention that the application of the deportation statute to an alien with near lifelong residence in this country and no connections with the country to which deportation is to be made is a violation of the Fifth and Eighth Amendments presents an emotional but not a legal argument. Appellant suffers the penalty of having his temporary benefits in the asylum country terminated, not of having an established right of citizenship denied. Even though the result "bristles with severities," *Harisiades v. Shaughnessy,* 342 U.S. 580, 587, 72 S.Ct. 512, 96 L.Ed. 586 (1952), the power of Congress to deport aliens—even those of long residence—has been frequently recognized. *See, e. g., Galvan v. Press,* 347 U.S. 522, 74 S.Ct. 737, 98 L.Ed. 911 (1954). Deportation is strictly a Congressional policy question in which the judiciary will not intervene as long as procedural due process requirements have been met. *Id.* at 530–31, 74 S.Ct. 737. This court has also held that deportation is not cruel and unusual punishment under the Eighth Amendment even though the penalty may be severe. *Van Dijk v. INS,* 440 F.2d 798 (9th Cir. 1971); *Chabolla-Delgado v. INS,* 384 F.2d 360 (9th Cir. 1967), *cert. denied,* 393 U.S. 865, 89 S.Ct. 147, 21 L.Ed.2d 133 (1968). Additionally, the double jeopardy argument is without merit. Deportation is not criminal punishment, *Fong Yue Ting v. United States,* 149 U.S. 698, 730, 13 S.Ct. 1016, 37 L.Ed. 905 (1893); *Burr v. INS,* 350 F.2d 87, 91 & n. 1 (9th Cir. 1965); thus, the double jeopardy clause is inapplicable. *Bridges v. Wixon,* 144 F.2d 927, 936 (9th Cir. 1944), *rev'd on other grounds,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945).

Finally, LeTourneur urges that the government failed to establish that his two convictions did not arise out of a single scheme of criminal misconduct, in accord with 8 U.S.C. § 1251(a)(4). The deportation proceedings were initiated by an order to show cause addressed to appellant alleging five facts: (1) that appellant was not a citizen or national of the United States; (2) that he was a native and citizen of France; (3) that he entered the United States at New York City on or about September 23, 1939; (4) that he was convicted on March 13, 1973, of robbery in the first degree; and (5) that he was convicted on March 28, 1973 of robbery in the second degree. On the basis of these allegations, he was charged with being subject to deportation pursuant

to section 241(a)(4) of the Immigration and Nationality Act, 8 U.S.C. § 1251(a)(4), in that he had been convicted of two or more crimes involving moral turpitude not arising out of a single scheme of criminal misconduct. C.T. at 30.

█ At the hearing upon this order to show cause, both appellant and his attorney, Mr. John Hyun, were present in person. In the course of the proceedings, the following took place:

"Immigration Judge: All right. The five allegations are admitted as being true. Is that correct, counsel?

"Mr. Hyun: Yes, your honor.

"Immigration Judge: And do you concede deportability on behalf of the respondent?

"Mr. Hyun: Yes, your honor." C.T. at 23.

In addition, the records of conviction were shown to appellant, and he was asked if they related to him. LeTourneur himself answered that they did. *Id.* Having conceded the charge of deportability, appellant thus conceded that he had been convicted of two crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct. No other evidence was offered on the subject.

█ Much reliance is placed by the appellant upon our decision in *Wood v. Hoy*, 266 F.2d 825 (9th Cir. 1959). In that case, however, there was testimony that 2 or 3 weeks prior to the commission of the crimes, the four defendants met and agreed to participate in two armed robberies which later took place. *Id.* at 831–32. The court pointed out that in some cases the very nature of the criminal conduct could constitute substantial and probative evidence that they did not arise out of a single scheme of criminal misconduct. *Id.* at 831. It appears that such is this case. Even without the admission of the charge of deportability, it appears that the differences in the two crimes are sufficient for a prima facie showing by the government of the absence of a common scheme. We find that the record supports the judgment of the immigration judge and thus affirm.