**UNITED STATES of America, Plaintiff,**

v.

**Arturo GARAY–BURGOS, Defendant.**

**No. CR–96–489–PHX–ROS.**

United States District Court,
D. Arizona.

April 15, 1997.

Jon M. Sands, Federal Public Defender's Office, Phoenix, AZ, for Arturo Garay-Burgos.

Stanley Levis Patchell, Vincent Quill Kirby, Kevin M. Rapp, U.S. Attorney's Office, Phoenix, AZ, for U.S.

### ORDER

SILVER, District Judge.

The Defendant asks this Court to dismiss the indictment against him for the charge of re-entry after deportation on the grounds that his prior deportation was obtained in violation of the double jeopardy clause of the Fifth Amendment to the United States Constitution.

### BACKGROUND

The Defendant has been charged with the crime of illegal re-entry after deportation under 8 U.S.C. §§ 1326(b)(1) and (2). On February 15, 1978, the Defendant was convicted of the crime of Conspiracy to Distribute Heroin in New Mexico. He was then incarcerated in federal prison. After he completed his prison term, on August 28, 1995, he was deported on the basis of this conviction. On October 4, 996, he entered and was found in the United States, Maricopa County, Arizona. He was then charged with the crime of illegal re-entry after deportation.

### DISCUSSION

The Double Jeopardy Clause of the Fifth Amendment protects any person against being "twice put in jeopardy of life or limb." U.S. Constitution, Amendment V. The Double Jeopardy Clause has been held to consist of several protections. "It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *Schiro v. Farley,* 510 U.S. 222, 229, 114 S.Ct. 783, 789, 127 L.Ed.2d 47 (1994) (quoting *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076–77, 23 L.Ed.2d 656 (1969)). In *INS v. Lopez–Mendoza,* 468 U.S. 1032, 1049, 104 S.Ct. 3479, 3488–89, 82 L.Ed.2d 778 (1984), the Supreme Court held that because a deportation hearing is a civil proceeding, certain protections that apply in the context of a criminal trial do not apply in a deportation hearing. The Court stated:

> *A deportation proceeding is a purely civil action to determine eligibility to remain in this country, not to punish* an unlawful entry, though entering and remaining unlawfully in this country is itself a crime.... The deportation hearing looks prospectively to the respondent's right to remain in this country in the future. Past conduct is relevant only insofar as it may shed light on the respondent's right to remain.... *The purpose of deportation is not to punish past transgressions but rather to out an end to a continuing violation of the immigration laws.*

*Id.* at 1038–39, 104 S.Ct. at 3483 (emphasis added) (declining to apply exclusionary rule to deportation proceedings). *See also, Fong Yue Ting v. United States,* 149 U.S. 698, 730, 13 S.Ct. 1016, 1028–29, 37 L.Ed. 905 (1893); *United States v. Yacoubian,* 24 F.3d 1, 10 (9th Cir.1994) (deportation is a civil rather than criminal proceeding); *Urbina–Mauricio v. INS,* 989 F.2d 1085, 1089 n. 7 (9th Cir. 1993) (deportation not a criminal punishment); *LeTourneur v. INS,* 538 F.2d 1368, 1370 (9th Cir.1976), *cert. denied,* 429 U.S. 1044, 97 S.Ct. 748, 50 L.Ed.2d 757 (1977); *Chabolla–Delgado v. Immigration and Naturalization Service,* 384 F.2d 360 (9th Cir.

1967), *cert. denied,* 393 U.S. 865, 89 S.Ct. 147, 21 L.Ed.2d 133 (1968) (deportation not a punishment within the meaning of the Eighth Amendment). Despite this long line of precedent, the Defendant urges this Court to find that the deportation to which he was subjected did violate the Double Jeopardy Clause because the Supreme Court's decision in *United States v. Halper,* 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), invalidates the long-standing rule that deportation is not a punishment.

**A. Controlling Supreme Court precedent**

The Defendant argues that the Supreme Court's opinion in *Halper* established a new test, which subjects *all* government civil sanctions to constitutional scrutiny on a case-by-case basis. This position misstates the law.

In *Halper,* the Court considered the question of whether and under what circumstances an *in Personam.* civil penalty might constitute punishment for Double Jeopardy purposes. The Court set forth a balancing analysis to be conducted to determine whether a particular civil penalty constitutes punishment for Double Jeopardy purposes. The Court stated that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." *Id.* at 448, 109 S.Ct. at 1902. The Court concluded that in the rare case where a "fixed penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused," the offender is entitled to an accounting of the Government's damages and costs to determine if the penalty sought in fact constitutes a second punishment. *Id.* at 449, 109 S.Ct. at 1902. Following *Halper,* the Defendant argues that deportation, although classified as a civil proceeding, is in fact a "severe and shocking punishment" and serves deterrent and retributive purposes, rather than any remedial purpose which would justify the imposition of the civil penalty.

However, the Supreme Court commented on and limited the narrow reach of *Halper's*

case-by-case approach in *United States v. Ursery,* —— U.S. ——, ——, 116 S.Ct. 2135, 2144, 135 L.Ed.2d 549 (1996), distinguishing that approach from the categorical approach long used to determine whether *in rem* civil forfeitures constitute punishment for Double Jeopardy purposes. *See e.g., United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980); *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 363, 104 S.Ct. 1099, 1105, 79 L.Ed.2d 361 (1984). In distinguishing *Halper,* the Supreme Court relied on the distinction historically drawn between *in Personam* civil penalties and *in rem* civil forfeitures, *see Various Items of Personal Property v. United States,* 282 U.S. 577, 581, 51 S.Ct. 282, 283–84, 75 L.Ed. 558 (1931), and the practical difficulty of applying *Halper* to a civil forfeiture. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2144.

Because a deportation is an *in Personam* civil penalty, the *Ursery* analysis regarding *in rem* civil forfeitures is distinguishable and tends to suggest that this Court might be constrained to follow the case-by-case balancing approach adopted in *Halper,* rather than the categorical approach recognized in *Ursery.* However, the balancing test adopted in *Halper,* focuses heavily on the amount of the civil fine imposed when weighing it against the actual amount of damages suffered by the Government. In *Halper,* the Court found that the fine imposed was sufficiently disproportionate to the Government's actual damages to constitute punishment where the fine imposed was $130,000, but the district court had determined that the Government's actual damages were no more than $16,000. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2143; *Halper,* 490 U.S. at 452, 109 S.Ct. at 1903–04.

By contrast, this case does not concern the imposition of monetary penalties. The most analogous case from the Ninth Circuit is *United States v. Borjesson,* 92 F.3d 954, 956 (9th Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 622, 136 L.Ed.2d 545 (1996), where the court held in the context of a challenge to an administrative debarment from participation in HUD programs that, "[i]n the case of debarment, a non-monetary sanction,

quantification is out of the question. *Ursery,* not *Halper,* must guide us." Similarly here, where this Court is confronted with a challenge to a deportation, it would be impossible to quantify in dollar amounts the cost of the deportation to the individual or the value of the deportation to the United States. It would also be impossible to quantify the amount of damages suffered by the Government in the particular case of an alien who remains in the United States without legal permission. The balancing analysis employed in *Halper* focuses directly on the relationship between the amount of money necessary to compensate the Government for its costs incurred as a result of the wrong-doer's criminal activities and the amount of the civil penalty actually imposed. Accordingly, this analysis is unworkable in the context of a challenge to the civil penalty of deportation, where the deportation was never intended to satisfy a quantifiable debt owed to the United States government. *See e.g., Ursery,* —— U.S. at ——, 116 S.Ct. at 2144 (noting practical difficulty of applying *Halper* to a civil forfeiture).

### B. Application of two step inquiry

By contrast, the two-step categorical approach employed by the Supreme Court in *Ursery* is helpful in analyzing the question of whether a deportation following a felony conviction constitutes a "multiple punishment" within the meaning of the Double Jeopardy clause. That approach directs the Court to ask whether (1) Congress intended proceedings under the particular statute to be remedial and (2) the proceedings are "so punitive in fact as to 'persuade us that the [forfeiture] proceedings may not legitimately be viewed as civil in nature, despite Congress' intent." *Ursery,* —— U.S. at ——, 116 S.Ct. at 2147 (quoting *89 Firearms,* 465 U.S. at 366, 104 S.Ct. at 1107).

### 1. Congressional intent

It has historically been understood that the "expulsion of aliens is a sovereign power necessary to the safety of the country, to be regulated by the legislative department." *See* H.R.Rep. No. 82–1365 (1952), *reprinted in* 1952 U.S.S.C.A.N. 1653, 1654.

The purpose of deportation is to exclude from the United States persons whom the legislature believes to be a threat to the nation's safety and welfare, including persons, such as criminal aliens, who have demonstrated a "disregard for this nation's laws." *See* H.R.Rep. No. 104–22, at 8 (1995). "It is thoroughly established that Congress has power to order the deportation of aliens whose presence in the country *it deems hurtful* .... [I]t is simply *a refusal by the government to harbor persons whom it does not want." Harisiades v. Shaughnessy,* 342 U.S. 580, 594, 72 S.Ct. 512, 521, 96 L.Ed. 586 (1952) (emphasis added). *See also, Bugajewitz v. Adams,* 228 U.S. 585, 591, 33 S.Ct. 607, 608, 57 L.Ed. 978 (1913) (deportation simply a refusal to harbor persons whom it does not wish to harbor); *Fong Yue Ting,* 149 U.S. at 730, 13 S.Ct. at 1028–29 ("[D]eportation ... is but a method of enforcing the return to his own country of an alien who has not complied with the conditions upon the performance of which the government of the nation ... has determined that his continuing to reside here shall depend.").

Thus, it is well-established that Congress' intent in providing for deportation is to provide a mechanism for controlling the sovereignty of the United States by determining which persons shall be excluded because they are considered to present a threat to the safety or security of the nation.

### 2. Effect of deportation

The second step in the inquiry is to determine whether deportation proceedings are "so punitive as to require application of the full panoply of constitutional protections required in a criminal trial," despite Congress' intent to the contrary. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2142. The Defendant urges this Court to find that the "severe and shocking effect" of a deportation on the individual deported renders the proceeding punishment in fact.

To establish that a proceeding is so punitive in fact as to be equivalent to a criminal proceeding for Double Jeopardy purposes requires "the clearest proof." *Id.* at ——, 116

S.Ct. at 2148;[1] *United States v. Ward,* 448 U.S. at 251, 100 S.Ct. at 2642–43. To aid in the inquiry, this Court may look to the seven factors set forth in *Kennedy v. Mendoza–Martinez,* 372 U.S. 144, 167–68, 83 S.Ct. 554, 566–68, 9 L.Ed.2d 644 (1963), though this list is neither exhaustive nor dispositive. *United States v. Ward,* 448 U.S. at 248–49, 100 S.Ct. at 2641–42. Those factors include whether: (1) the sanction involves an affirmative disability or restraint; (2) it has historically been regarded as a punishment; (3) it comes into play only on a finding of scienter; (4) its operation will promote the traditional aims of punishment—retribution and deterrence; (5) the behavior to which it applies is already a crime; (6) an alternative to which it may rationally be connected is assignable for it; and (7) it appears excessive in relation to the alternative purpose assigned. *Mendoza–Martinez,* 372 U.S. at 168–69, 83 S.Ct. at 567–68.

Considering these factors together, this Court considers most significant that deportation has historically been regarded as a remedial measure, not a punishment, that deportation serves important nonpunitive goals, and that a wide variety of circumstances, unrelated to criminal activity, serve as bases for deportation.

It is significant that deportation has consistently been classified as a civil proceeding, which does not invoke the need for the constitutional provisions attendant to criminal proceedings and is not considered a punishment for Double Jeopardy purposes despite its harsh consequences. *Lopez–Mendoza,* 468 U.S. at 1038–39, 104 S.Ct. at 3483–84; *Fong Yue Ting,* 149 U.S. at 730, 13 S.Ct. at 1028–29; *Yacoubian,* 24 F.3d at 10 (deportation is a civil rather than criminal procedure); *Urbina–Mauricio v. INS,* 989 F.2d at 1089 n. 7; *LeTourneur v. INS,* 538 F.2d at 1370; *Chabolla–Delgado,* 384 F.2d at 360 (deportation not a punishment within the meaning of the Eighth Amendment).

In addition, deportation serves important, nonpunitive goals. It protects our nation's welfare and resources from any whose presence is deemed inimical to those interests. It provides for a streamlined method whereby Congress can authorize the exclusion or removal of those who, for example, are likely to become public charges or who, through criminal activity, present a drain on the resources of our criminal justice system. H.R.Rep. No. 104–22, at 6 (1995). Though it may be true that an incidental benefit of deportation is that it deters aliens from committing crimes out of fear of deportation, this benefit does not alter the stated purpose and effect of the deportation laws. It has long been held that deterrence can serve both criminal and civil goals. *Ursery,* —— U.S. at ——, 116 S.Ct. at 2149; *Bennis v. Michigan,* —— U.S. ——, ——, 116 S.Ct. 994, 1000, 134 L.Ed.2d 68 (1996) (forfeiture of property prevents illegal uses by imposing an economic penalty which renders illegal behavior unprofitable).

What is more, deportation is not limited to those classes of persons who have been convicted of crimes. Any alien who would have been excludable when he or she arrived in this country is ipso facto deportable. 8 U.S.C. § 1251(a)(1)(A). Included in this category are, for example, persons whose behavior associated with a physical or mental disorder may pose a threat to the property, safety, or welfare of the alien or others, 8 U.S.C. § 1182(a)(1)(A), or those who are likely to become a public charge. 8 U.S.C. § 1182(a)(4). The reason for excluding such persons does not focus on their culpability for certain behavior; it simply focuses on the likelihood that they will become a burden to our society.

■ Although the Defendant urges this Court to conclude that the severe effect on the individual renders the proceeding punitive, this argument is unpersuasive. The question of whether a particular proceeding subjects an individual to criminal punishment is not determined by focusing on the subjective effect on the individual. "[W]hether a sanction constitutes punishment is not deter-

---

1. The Court emphasized that its holding does not imply that a civil forfeiture is *per se* exempt from the scope of the Double Jeopardy clause, but rather that the "clearest proof" is required to show that a sanction intended by Congress to be remedial is in fact punitive. *Ursery,* —— U.S. at —— n. 3, 116 S.Ct. at 2148 n. 3.

mined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.'" *Borjesson,* 92 F.3d at 956 (quoting *Department of Revenue v. Kurth Ranch,* 511 U.S. 767, 777 n. 14, 114 S.Ct. 1937, 1945 n. 14, 128 L.Ed.2d 767 (1994) (quoting *Halper,* 490 U.S. at 447 n. 7, 109 S.Ct. at 1901 n. 7)). There is no doubt that deportation is a harsh sanction indeed from the perspective of the individual deported. *See Fong Yue Ting,* 342 U.S. at 594, 72 S.Ct. at 521; *Mahler v. Eby,* 264 U.S. 32, 39, 44 S.Ct. 283, 286, 68 L.Ed. 549 (1924) (notwithstanding that deportation is burdensome and severe for the alien, it is not punishment); *Shoaee v. Immigration and Naturalization Service,* 704 F.2d 1079, 1083 (9th Cir.1983). Nevertheless, the relevant inquiry focuses on whether a deportation works a punishment as that term is understood in our society, and as the foregoing analysis has revealed, it is unquestionable that it does not.[2]

For the reasons stated above, this Court finds that the prior deportation was not obtained in violation of the Double Jeopardy clause of the Fifth Amendment.

Accordingly,

**IT IS ORDERED** that the Defendant's Motion to Dismiss the Indictment is denied.

---

**2.** The Defendant has not alleged that the particular deportation in his case falls outside the main- stream to establish that it was punitive in nature.