**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Aurelio GARCIA–MARTINEZ,
Defendant–Appellant.**

No. 99–50546.

United States Court of Appeals,
Ninth Circuit.

Submitted April 13, 2000*

Filed Oct. 3, 2000

---

* The panel finds this case appropriate for submission without oral argument pursuant to

Fed. R.App. P. 34(a)(2).

Todd W. Burns, Federal Defenders of San Diego, Inc., San Diego, California, for the defendant-appellant.

Sam T. Liccardo, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: FERNANDEZ and WARDLAW, Circuit Judges, and WEINER,** District Judge.

WARDLAW, Circuit Judge:

Aurelio Garcia–Martinez appeals his conviction, upon a conditional guilty plea, on one count of being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Garcia–Martinez collaterally attacks the prior deportation order upon which his conviction rested, contending that his expedited administrative removal for being an aggravated felon violated the Due Process Clause of the Fifth Amendment. He claims that the Immigration and Naturalization Service enforcement officer who adjudicated the removal order was institutionally biased. We have jurisdiction under 28 U.S.C. § 1291. Because there was no institutional bias and,

in any event, Garcia–Martinez failed to show actual prejudice from the asserted procedural defect, we affirm.

## I. Background

This case arises from Garcia–Martinez's November 18, 1998 arrest by United States Border Patrol agents, after which he admitted that he was a Mexican citizen present in the United States without permission. Earlier that year, on June 26, 1998, while Garcia–Martinez was in custody at Centinela State Prison in Imperial, California, the INS served him with a Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"). INS Officer A. Neil Clark, the issuing service officer,[1] signed the Notice of Intent. It charged Garcia–Martinez with having entered the United States on January 1, 1993, without inspection and without having been lawfully admitted for permanent residence. Garcia–Martinez also was charged with a February 7, 1994 conviction in California Superior Court of the offense of sexual intercourse by means of force, violence, and fear, in violation of section 261 of the California Penal Code, for which he was sentenced to eight years' imprisonment.

The Notice of Intent further stated that Garcia–Martinez was deportable because "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and Garcia–Martinez's California conviction was for an "aggravated felony." *See* 8 U.S.C. § 1101(a)(43). The Notice of Intent informed Garcia–Martinez that he was subject to an expedited administrative removal proceeding under 8 U.S.C. § 1228(b), that he could choose to be represented by counsel at the proceeding, and that he had ten calendar days within which to respond in writing to the charges against him.[2]

---

** The Honorable Charles R. Weiner, Senior United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

1. "Issuing Service officer means any Service officer listed in § 239.1 ... as authorized to issue notices to appear." 8 C.F.R. § 238.1(a).

Section 239.1 lists more than twenty types of INS officials who qualify as issuing officers.

2. The Notice of Intent also stated that judicial review of any final administrative order was available. The district court found, however, that no judicial review was available. *See Lewis v. INS,* 194 F.3d 539, 541 (4th Cir.1999)

Garcia–Martinez signed and dated the Notice of Intent on June 26, 1998, the same day it was served. Garcia–Martinez also signed the "I do not wish to contest" portion of the Notice of Intent, admitting the charges that he was deportable and that he was ineligible for any relief from removal. He waived the fourteen-day period for execution of the final removal order.

The same day, INS Officer Hector Najera, Jr., the deciding Service officer,[3] signed a Final Administrative Removal Order ("Removal Order"). Ten days later, the INS removed Garcia–Martinez from the United States to Mexico, through the Calexico, California Port of Entry.

On December 2, 1998, following his November arrest, the United States filed a one-count indictment against Garcia–Martinez in the Southern District of California, charging him with being a deported alien found in the United States in violation of 8 U.S.C. § 1326. Garcia–Martinez moved to dismiss the indictment in the district court. He argued that entry of the 1998 order of deportation was fundamentally unfair. Specifically, he contended that the expedited removal proceeding violated his due process rights under the Fifth Amendment. Therefore, he argued, the government could not rely on the order to satisfy the prior deportation element of the Section 1326 charge.

The district court denied the motion to dismiss. It held that neither the statute governing the expedited removal procedure, 8 U.S.C. § 1228, nor its implementing regulation, 8 C.F.R. § 238.1, was facially unconstitutional because the statutory scheme allowed the INS discretion to provide aliens a full removal hearing before an immigration judge, which the INS permits whenever an alien contests the removal charges. The district court found that Garcia Martinez's "waiver of a deportation hearing was not knowing or intelligent" because he was never informed that he could proceed before an immigration judge and the INS failed to provide him with a list of available free legal services. It concluded, however, that "Garcia–Martinez has not shown, and under the circumstances of his case cannot show, that he suffered prejudice from the defects in his removal proceeding."[4] Thus, the government was entitled to rely upon Garcia–Martinez's prior deportation for its Section 1326 charge.

On May 21, 1999, Garcia–Martinez entered a conditional plea of guilty to the one-count indictment. On June 24, 1999, the district court sentenced Garcia–Martinez to thirty-seven months in custody and three years of supervised release. This timely appeal followed.

## II. Fundamental Fairness

■■■ Garcia–Martinez contends that the district court erred in rejecting his due process challenge to expedited removal. A defendant charged under 8 U.S.C. § 1326 may not collaterally attack the underlying deportation order unless the order is fundamentally unfair. *See* 8 U.S.C. § 1326(d).[5] Garcia–Martinez contends the

("Thus, under [8 U.S.C. § 1252(a)(2)(C),] there is plainly no appellate recourse from a final order of removal for an alien who is removable ... because he has committed an aggravated felony."); *Valderrama–Fonseca v. INS*, 116 F.3d 853, 855 & n. 1 (9th Cir.1997) (noting the same). On appeal, the government apparently concedes that § 1252(a)(2)(C) barred direct judicial review of the deportation order.

3. "Deciding Service officer means a district director, chief patrol agent, or another immigration officer designated by a district director or chief patrol agent, who is not the same person as the issuing Service officer." 8 C.F.R. § 283.1(a).

4. Whether Garcia–Martinez's waiver was knowing and intelligent and whether he has shown prejudice are not at issue on appeal.

5. 8 U.S.C. § 1326(d) provides that:
 In a criminal proceeding under [8 U.S.C. § 1326], an alien may not challenge the validity of the [underlying] deportation order ... unless the alien demonstrates that–
 (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;

INS violated his due process rights by unconstitutionally applying the expedited removal procedures set forth in 8 U.S.C. § 1228 and 8 C.F.R. § 238.1. We review de novo Garcia–Martinez's "claim that defects in the underlying deportation procedure invalidated the proceeding for use in his criminal proceedings." *United States v. Corrales–Beltran*, 192 F.3d 1311, 1313 (9th Cir.1999). Garcia–Martinez "can succeed in this collateral challenge only if he is able to demonstrate that: (1) his due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *United States v. Zarate–Martinez*, 133 F.3d 1194, 1197 (9th Cir.1998). We address each of these requirements in turn.

### A. Due Process

■ Garcia–Martinez argues that his removal pursuant to 8 U.S.C. § 1228 cannot be used as an element of the offense of illegal re-entry after removal under 8 U.S.C. § 1326 because that removal was rendered in a proceeding conducted by an adjudicator inherently biased due to his daily enforcement activities. To evaluate this contention, we first review the expedited administrative removal procedure to which Garcia–Martinez was subjected.

Where, as here, an illegal alien has been convicted of an aggravated felony, the Attorney General may commence deportation proceedings. *See* 8 U.S.C. § 1228(b). Proceedings under Section 1228(b) are

governed by regulations promulgated by the Attorney General and set forth in 8 C.F.R. § 238.1. Under 8 C.F.R. § 238.1, removal proceedings commence when an issuing Service officer determines that sufficient evidence supports removal and serves the alien with a Notice of Intent. *See* 8 C.F.R. § 238.1(b)(1).[6] If, as here, the alien concedes deportability, a "deciding Service officer shall issue and cause to be served upon the alien a Final Administrative Removal Order that states the reasons for the deportation decision." 8 C.F.R. § 238.1(d)(1). A deciding Service officer may not be "the same person as the issuing Service officer." 8 C.F.R. § 238.1(a).

Garcia–Martinez argues that deciding Service officers, as INS enforcement employees, are inherently biased adjudicators. Although we have not addressed the question of institutional bias in the context of expedited removal proceedings conducted by deciding Service officers under 8 U.S.C. § 1228, we have considered the issue on review of deportation orders issued after full immigration hearings. *See LeTourneur v. INS*, 538 F.2d 1368 (9th Cir. 1976); *Hosseinmardi v. INS*, 405 F.2d 25 (9th Cir.1968). In that context, we rejected the contention that because the immigration judge "is under the supervision of Immigration and Naturalization Service officers who perform prosecuting and investigative functions, due process may be violated." *LeTourneur*, 538 F.2d at 1370; *accord Hosseinmardi*, 405 F.2d at 27–28.

---

(2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
(3) the entry of the order was fundamentally unfair.

This provision partially codifies the due process standard governing collateral attacks established by the Supreme Court in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). *See United States v. Estrada–Torres*, 179 F.3d 776, 780 (9th Cir.1999) *cert. denied* —— U.S. ——, 121 S.Ct. 156, —— L.Ed.2d —— (2000).

**6.** 8 C.F.R. § 238.1(b)(2)(i) provides in relevant part:

The Notice of Intent shall set forth the preliminary determinations and inform the alien of the Service's intent to issue a ... Final Administrative Removal Order, without a hearing before an immigration judge.... The Notice of Intent shall include allegations of fact and conclusions of law. It shall advise that the alien: has the privilege of being represented, at no expense to the government, by counsel of the alien's choosing ...; may inspect the evidence supporting the Notice of Intent; may rebut the charges within 10 calendar days after service of such Notice (or 13 calendar days if service of the Notice was by mail).

We conclude that the argument similarly lacks merit in the context of expedited removals.

One other circuit has addressed this issue, and we find its reasoning persuasive. *See United States v. Benitez–Villafuerte,* 186 F.3d 651 (5th Cir.1999) *cert. denied,* — U.S. —, 120 S.Ct. 838, 145 L.Ed.2d 704 (2000) (No. 99–7193). In *Benitez–Villafuerte,* the Fifth Circuit considered whether "the INS impermissibly functioned in both a prosecutorial and an adjudicative capacity during the § 1228 proceeding." *Id.* at 659. Relying primarily on *Marcello v. Bonds,* 349 U.S. 302, 311, 75 S.Ct. 757, 99 L.Ed. 1107 (1955), the Fifth Circuit held that this allegation of institutional, structural bias was "wholly devoid of merit." *Id.*

We agree with the Fifth Circuit that *Marcello* is instructive. In *Marcello,* the Supreme Court rejected the argument that a deportation hearing violated due process because the INS special inquiry officer who conducted the hearing "was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions." *Marcello,* 349 U.S. at 311, 75 S.Ct. 757. As the *Marcello* Court reasoned:

> The contention is without substance when considered against the long-standing practice in deportation proceedings, judicially approved in numerous decisions in the federal courts, and against the special considerations applicable to deportation which the Congress may take into account in exercising its particularly broad discretion in immigration matters.

*Id.; accord LeTourneur,* 538 F.2d at 1370 ("The separate contention that because the officer is under the supervision of Immigration and Naturalization Service officers who perform prosecuting and investigative functions, due process may be violated, is also without merit." (citing *Marcello,* 349 U.S. at 311, 75 S.Ct. 757)); *Hosseinmardi,* 405 F.2d at 27–28 (citing *Marcello,* 349 U.S. at 311, 75 S.Ct. 757, in rejecting a similar institutional-bias argument). Thus, as the Fifth Circuit noted, "the Supreme Court's precedent on this point is clear: we will not presume bias from the mere institutional structure of the INS." *Benitez–Villafuerte,* 186 F.3d at 660.

Garcia–Martinez nevertheless insists that *Benitez–Villafuerte* and *Marcello* do not counsel against him. He asserts that his bias argument differs from that in *Benitez–Villafuerte* because it is not predicated on the commingling of prosecutorial and adjudicative functions in a Section 1228 proceeding, but rather on the daily activities of INS enforcement officers. This contention is without merit. The argument that the daily activities of the officers, which are primarily prosecutorial and investigative, preclude them from constitutionally functioning in an adjudicative capacity is no different than the argument that the officers "impermissibly functioned in both a prosecutorial and an adjudicative capacity." *Benitez–Villafuerte,* 186 F.3d at 659. Thus, just as in *Benitez–Villafuerte,* we decline to "presume bias from the mere institutional structure of the INS." *Id.* at 660.

Furthermore, although the *Marcello* Court focused on the issue of inherent bias resulting from supervision of an adjudicator by those with prosecutorial or investigative functions, rather than commingling of functions within one individual, in other administrative contexts the Supreme Court has reasoned:

> The contention that the combination of investigative and adjudicative functions necessarily creates an unconstitutional risk of bias in administrative adjudication .... must overcome a presumption of honesty and integrity in those serving as adjudicators; and it must convince that, under a realistic appraisal of psychological tendencies and human weakness, conferring investigative and adjudicative powers on the same individuals poses such a risk of actual bias or prejudgment that the practice must be forbidden if the guarantee of due process is to be adequately implemented.

*Withrow v. Larkin*, 421 U.S. 35, 47, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975). Thus, the Court rejected the "bald proposition" that Garcia–Martinez advances here, "that agency members who participate in an investigation are disqualified from adjudicating." *Id.* at 52, 95 S.Ct. 1456.

Garcia–Martinez also attempts in three ways to distinguish *Marcello* on its facts and, by necessary implication, our holdings in *LeTourneur*, 538 F.2d at 1370, and *Hosseinmardi*, 405 F.2d at 27–28. First, he asserts that the special inquiry officer whose role was at issue in *Marcello* functioned more like an immigration judge than a deciding Service officer. We disagree, finding no relevant distinction between the roles and responsibilities of a special inquiry officer and a deciding Service officer.

Special inquiry officers, the forerunners of immigration judges, were officers designated by the Attorney General to oversee deportation and exclusion proceedings. *See* Thomas A. Aleinikoff & David A. Martin, *Immigration Process and Policy* 107–110 (2d ed.1991).[7] In 1983, immigration judges were moved out of the INS into a new unit insulated from the enforcement functions of the INS, the Executive Office for Immigration Review. *See id.* at 109; *see also Reno v. Flores*, 507 U.S. 292, 308, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("The immigration judge is a quasi-judicial officer in the Executive Office for Immigration Review, a division separated from the Service's enforcement staff."). On the other hand, before 1983, special inquiry officers, like deciding Service officers, were employees of the INS, supervised by officials with enforcement responsibilities. *See Marcello*, 349 U.S. at 311, 75 S.Ct. 757 (noting "the special inquiry officer was subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions"). Furthermore, like a deciding Service officer but unlike an immigration judge, a special inquiry officer could engage in investigative and prosecutorial functions for the INS, and was barred "only from hearing cases which he has taken some part in investigating or prosecuting." *Id.* at 305–06, 75 S.Ct. 757; *see also* 8 C.F.R. § 1.1(i).[8]

Second, Garcia–Martinez contends that *Marcello*, which involved a direct challenge to the validity of a deportation order, does not govern challenges to the use of such an order in a later criminal prosecution. To challenge the use of the Removal Order in this criminal prosecution, however, Garcia–Martinez must "demonstrate that ... his due process rights were violated by defects in his underlying deportation proceeding." *Corrales–Beltran*, 192 F.3d at 1316. *Marcello* therefore is instructive as to whether there was a due process violation in Garcia–Martinez's underlying expedited removal proceeding, and thus whether Garcia–Martinez satisfied the first requirement for a successful collateral attack on his prior deportation. *See Benitez–Villafuerte*, 186 F.3d at 659–60.

Finally, Garcia–Martinez tries to distinguish *Marcello* on the ground that there, unlike in this case, the petitioner appealed to the Board of Immigration Appeals. In finding no due process violation, however, the *Marcello* Court made no mention of the petitioner's appeal to the Board. The Supreme Court instead focused on the relationship between a special inquiry officer and his investigative and prosecutorial su-

---

7. The term "special inquiry officer" was replaced by "immigration judge" in 1973. *See* Aleinikoff & Martin, *supra*, at 109.

8. Garcia–Martinez argues that the role of special inquiry officers was more similar to that of current immigration judges than of deciding Service officers because special inquiry officers were deemed "specially qualified" to conduct deportation and beginning in 1956, like immigration judges, they had to be lawyers. This argument is without merit, however, because deciding Service officers also must be specifically designated for that position, *see* 8 C.F.R. § 238.1(a), and at the time of the *Marcello* decision, in 1955, no lawyer requirement existed, *see* Aleinikoff & Martin, *supra*, at 109.

pervisors at the INS, and held that, in a deportation hearing, adjudication by a "special inquiry officer ... subject to the supervision and control of officials in the Immigration Service charged with investigative and prosecuting functions" did not violate due process. *Marcello,* 349 U.S. at 311, 75 S.Ct. 757.

We therefore conclude that Officer Najera's adjudication of Garcia–Martinez's expedited removal proceeding is not a due process violation.

## B. Prejudice

 Even if we were to find a due process violation, Garcia–Martinez's claim would fail because he cannot meet the second requirement for a collateral challenge to an underlying deportation proceeding. To succeed, he must demonstrate that prejudice resulted from the asserted procedural defect. *See Corrales–Beltran,* 192 F.3d at 1316. To meet this burden, Garcia–Martinez must demonstrate plausible grounds for relief from deportation. *See United States v. Esparza–Ponce,* 193 F.3d 1133, 1136 (9th Cir. 1999) *cert. denied* —— U.S. ——, 121 S.Ct. 107, —— L.Ed.2d —— (2000).

Garcia–Martinez does not assert that he suffered actual prejudice. Because his deportation was a foregone conclusion, he cannot demonstrate that he had plausible grounds for relief from deportation. *See Esparza–Ponce,* 193 F.3d at 1136. His prior California rape conviction constitutes an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(A), a conclusion that Garcia–Martinez does not dispute. Under 8 U.S.C. § 1227(a)(2)(A)(iii), any "alien who is convicted of an aggravated felony at any time after admission is deportable." And, under 8 U.S.C. § 1228(b), no alien deportable as an aggravated felon under Section 1227(a)(2)(A)(iii) "shall be eligible for any

relief from removal that the Attorney General may grant in the Attorney General's discretion." 8 U.S.C. § 1228(b)(5); *see also Benitez–Villafuerte,* 186 F.3d at 659.

Instead, Garcia–Martinez contends that prejudice is presumed in a proceeding before a biased adjudicator, relying on *United States v. Mendoza–Lopez,* 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987).[9] In *Mendoza–Lopez,* the Supreme Court reasoned that there must be "some meaningful review of the administrative proceeding" if it is "to play a critical role in the subsequent imposition of a criminal sanction." *Id.* at 837–38, 107 S.Ct. 2148. The *Mendoza–Lopez* Court noted that there may be some procedural errors that are so fundamental "that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." *Id.* at 839 n. 17, 107 S.Ct. 2148. Garcia–Martinez argues that Officer Najera's inherent bias is just the sort of fundamental unfairness the Supreme Court had in mind. As the Court said, "[w]e have previously recognized, however, in the context of criminal proceedings, that 'some errors necessarily render a trial fundamentally unfair.'" *Id.* (quoting *Rose v. Clark,* 478 U.S. 570, 577, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (holding criminal adjudication by a biased judge renders trial fundamentally unfair)).

The *Mendoza–Lopez* Court did not strictly apply the holding of *Rose v. Clark* in the administrative context, however. Rather, noting that "the procedures required in an administrative proceeding are less stringent than those demanded in a criminal trial," the Court concluded that "analogous abuses could operate, under some circumstances, to deny effective judicial review of administrative determina-

---

9. Garcia–Martinez also asserts that his due process rights were violated because 8 U.S.C. § 1252(a)(2)(C) barred direct judicial review of his removal. This argument also fails because he cannot show the requisite actual prejudice. *See United States v. Proa–Tovar,* 975 F.2d 592, 595 (9th Cir.1992) (en banc)

("A defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice.").

tions." *Mendoza–Lopez*, 481 U.S. at 839 n. 17, 107 S.Ct. 2148.[10]

■ Although we have not previously addressed the claim that prejudice should be presumed from adjudicator bias in the underlying proceeding, our cases declining to adopt a presumed prejudice standard for other collateral due process challenges to underlying deportation orders in Section 1326 prosecutions suggest the answer we reach today—that Garcia–Martinez must demonstrate actual prejudice. *See United States v. Leon–Leon*, 35 F.3d 1428, 1431–32 (9th Cir.1994) (requiring actual prejudice where immigration judge failed to translate crucial inquiries); *Proa–Tovar*, 975 F.2d at 594–95 (requiring actual prejudice where alien is deprived of direct judicial review of deportation order). In *Leon–Leon*, we stated that "[t]he only circumstance under which we suggested no showing of prejudice was necessary was 'when the administrative proceedings were so flawed' that an effective judicial review of a deportation, which might otherwise have been prevented, would be foreclosed." *Leon–Leon*, 35 F.3d at 1431; *see also Proa–Tovar*, 975 F.2d at 595 (concluding that in the absence of any "discretionary authority that might have prevented the deportation," the defendant "bears the burden of proving prejudice"). Therefore, we have indicated that we will presume prejudice only where discretionary relief from deportation is available.[11]

This case fits squarely within the logic of our prior cases because Officer Najera had no discretionary authority to grant Garcia–Martinez relief from deportation. As noted above, Garcia–Martinez "would have been deported anyway." *Leon–Leon*, 35 F.3d at 1431. Because he conceded his guilt—that he was an illegal alien convicted of an aggravated felony—Garcia–Martinez was statutorily barred from obtaining any relief from deportation. *See* 8 U.S.C. § 1228(b)(5). Consequently, even if we were to find institutional bias at a level sufficient to implicate our notions of fundamental fairness, we would not presume prejudice. To prevail, Garcia–Martinez must demonstrate actual prejudice, a showing he has conceded he cannot make.

## III. Conclusion

We therefore affirm Garcia–Martinez's conviction.

AFFIRMED.

---

**10.** Only the Fifth Circuit has addressed whether prejudice may be presumed under *Mendoza–Lopez* in the context of collateral challenges based on adjudicator bias, holding that it may not. *See Benitez–Villafuerte*, 186 F.3d at 658–60. Every circuit to consider collateral challenges to deportation orders on other grounds, however, including ours, has required a showing of actual prejudice. *See Proa–Tovar*, 975 F.2d at 595; *see also United States v. Loaisiga*, 104 F.3d 484, 487 (1st Cir.1997); *United States v. Torres–Sanchez*, 68 F.3d 227, 230 (8th Cir.1995); *United States v. Espinoza–Farlo*, 34 F.3d 469, 471 (7th Cir. 1994); *United States v. Meraz–Valeta*, 26 F.3d 992, 998 (10th Cir.1994); *United States v.*

*Fares*, 978 F.2d 52, 57 (2d Cir.1992); *United States v. Holland*, 876 F.2d 1533, 1536 (11th Cir.1989).

**11.** This conclusion comports with the concept of structural error in the criminal context. The Supreme Court has recognized that some errors can never be harmless because "[w]ithout . . . basic protections [including an unbiased adjudicator], a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence." *Rose v. Clark*, 478 U.S. at 577, 106 S.Ct. 3101. Where, as here, however, a defendant has conceded his guilt, the reliability of the underlying proceeding is not in dispute.