**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

JOSE OCHOA,
*Defendant-Appellant.*

No. 15-10354

D.C. No.
3:14-cr-00525-RS-1

ORDER AND
OPINION

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted August 9, 2016
San Francisco, California

Filed July 3, 2017

Before: Susan P. Graber and M. Margaret McKeown,
Circuit Judges, and Barbara M. G. Lynn,[*] Chief District
Judge.

Order;
Per Curiam Opinion;
Concurrence by Judge Graber

---

[*] The Honorable Barbara M. G. Lynn, Chief United States District
Judge for the Northern District of Texas, sitting by designation.

**SUMMARY**[**]

---

**Criminal Law**

The panel granted a petition for panel rehearing, withdrew its memorandum disposition filed December 14, 2016, denied a petition for rehearing en banc as moot, and filed a published opinion reversing the defendant's conviction for illegal reentry in violation of 8 U.S.C. § 1326.

The removal underlying the defendant's illegal reentry conviction was based on the defendant's prior conviction for conspiracy to export defense articles without a license in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778.

The panel held that by criminalizing unlicensed exports of a broad range of munitions, § 2278 sweeps more broadly than the generic federal aggravated felony or firearms offenses, and that the defendant's underlying conviction thus does not categorically qualify as a proper § 1326 predicate offense. The panel held that § 2278 is not divisible, and thus did not proceed to the modified categorical approach. Because the statute was overbroad and indivisible, the § 2278 conviction could not serve as a proper predicate for removal.

The panel remanded with instructions to dismiss the indictment.

Concurring, Judge Graber, joined by Judge McKeown and Chief District Judge Lynn, wrote separately to express her

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

view that this case should be reheard en banc to correct this court's course with respect to the scope of collateral challenges under 8 U.S.C. § 1326(d), which has strayed increasingly far from the statutory text and is out of step with sister circuits' correct interpretation.

## COUNSEL

Geoffrey A. Hensen (argued), Chief Assistant Federal Public Defender; Steven G. Kalar, Federal Public Defender; Office of the Federal Public Defender, San Francisco, California; for Defendant-Appellant.

Phillip Kopczynski (argued), Special Assistant United States Attorney; Barbara J. Valliere, Chief, Appellate Division; Brian J. Stretch, United States Attorney; United States Attorney's Office, San Francisco, California; for Plaintiff-Appellee.

**ORDER**

Appellant's petition for panel rehearing is **GRANTED**. The memorandum disposition previously filed December 14, 2016, and appearing at 665 F. App'x 635, is hereby withdrawn. As the court's memorandum disposition is withdrawn, Appellant's petition for rehearing en banc is **DENIED** as moot. A published opinion will be filed contemporaneously with this order. Further petitions for rehearing and rehearing en banc may be filed.

**OPINION**

PER CURIAM:

Defendant Jose Ochoa, a citizen of Mexico, was convicted of conspiracy to export defense articles without a license, 18 U.S.C. § 371, 22 U.S.C. § 2778, and was removed from the United States because of that conviction. When he returned to the United States, he was convicted of illegal reentry in violation of 8 U.S.C. § 1326. In this appeal, he argues that the removal order was invalid because his 18 U.S.C. § 371 conviction for conspiring to violate 22 U.S.C. § 2778 was not a categorical match to the Immigration and Nationality Act's ("INA") aggravated felony or firearms offense categories. Reviewing de novo, *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014), we hold that Defendant was not originally removable as charged, and so could not be convicted of illegal reentry. We therefore reverse the judgment of conviction.

FACTUAL AND PROCEDURAL BACKGROUND

In 1998, Defendant was indicted for violating 18 U.S.C. § 371, the generic conspiracy statute; the object of the conspiracy was a violation of the Arms Export Control Act, 22 U.S.C. § 2778, exporting defense articles without a license. Defendant pleaded guilty to those charges in 1998 and was sentenced to a term of imprisonment. While in federal prison, he was served with a notice to appear in November 1998, charging him with removability. The notice to appear alleged, among other things, that Defendant was convicted on April 6, 1998, of conspiracy to export defense articles without a license in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778(a), and that the "'defense articles' included firearms and ammunition per criminal indictment #CR-M-97-387." Defendant's purported removability was predicated on conviction of an aggravated felony as set forth in 8 U.S.C. § 1101(a)(43)(C) and on conviction of a firearms offense as set forth in 8 U.S.C. § 1227(a)(2)(C).

At the hearing before an immigration judge ("IJ") on January 21, 1999, Defendant appeared without a lawyer, though he was offered more time to secure one. At the outset, the IJ explained that Defendant could appeal any decision rendered and provided Defendant with a document correctly explaining his appellate rights. With respect to the underlying conviction, the IJ asked if "some of the things [he was] exporting [were] firearms and ammunition," and Defendant answered, "Yes I was." After reviewing the certified indictment and judgment, the IJ explained that those documents "indicate[d] that between December 4th of 1997 and December 7th of that same year, [Defendant] and others conspired to ship firearms and ammunition from the United States to Mexico," and that the "[vehicle] [Defendant] was in

possession of contained 9 firearms and approximately 28,000 rounds of ammunition." The IJ "f[ou]nd that the charge of deportability under section [237(a)(2)(C)] of the [INA] has been sustained" and allowed the government "to amend by pen and ink the charge under 237 to read 101(a)(43)(U)," clarifying that Defendant's conviction was for conspiracy. The IJ found Defendant removable as charged.

After an exchange with Defendant, the IJ concluded: "I don't see that there is any relief available to you." He continued: "Now, you can accept that decision but if you disagree with it, you would have 30 days to appeal it. Did you want to accept my decision or reserve your right to appeal?" Defendant accepted. He served the remainder of his federal prison sentence and was removed to Mexico following his release on April 13, 2001.

In 2014, federal agents discovered Defendant in California; he was indicted for illegal reentry, under 8 U.S.C. § 1326. Defendant moved to dismiss the indictment, arguing that his 2001 removal proceedings violated due process because his prior conviction constituted neither an aggravated felony nor a firearms offense—an argument known as a "collateral attack" on the removal order. The district court denied that motion, Defendant was convicted, and the court sentenced Defendant to 16 months in prison. Following his release, Defendant was removed to Mexico once again. Defendant timely appeals.

## DISCUSSION

A. *Availability of Collateral Review*

A defendant charged with illegal reentry pursuant to 8 U.S.C. § 1326 has the right to bring a collateral attack challenging the validity of his underlying removal order, because that order serves as a predicate element of his conviction. *United States v. Aguilera-Rios*, 769 F.3d 626, 629–30 (9th Cir. 2014); *see also United States v. Mendoza-Lopez*, 481 U.S. 828, 838 (1987) (holding, before enactment of § 1326(d), that due process requires an opportunity to collaterally challenge a removal proceeding "at the very least where the defects . . . foreclose judicial review of that proceeding"). The mechanism for mounting such a challenge is codified in § 1326(d). To succeed, Defendant must demonstrate that: (1) he has exhausted any administrative remedies that may have been available to seek relief from the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair. 8 U.S.C. § 1326(d). But under our circuit's law, if Defendant was not convicted of an offense that made him removable under the INA to begin with, he is excused from proving the first two requirements. *See United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006) (holding all three requirements satisfied when notice to appear had charged removability solely on the basis of a crime that was not an aggravated felony under intervening case law); *United States v. Pallares-Galan*, 359 F.3d 1088, 1096, 1103–04 (9th Cir. 2004) (analyzing the statute of conviction to determine that the removal order was improper, satisfying first two elements, but remanding for the district court to consider the third element).

As explained below, we conclude that Defendant's statute of conviction was not an aggravated felony. And "§ 1326(d)(1) and (d)(2) [a]re satisfied when the IJ improperly characterized a prior conviction as an aggravated felony and erroneously informed the alien that he was ineligible for discretionary relief." *United States v. Gonzalez-Villalobos*, 724 F.3d 1125, 1131 (9th Cir. 2013). With respect to § 1326(d)(3), we have explained that, if Defendant "'was removed when he should not have been,' his . . . removal was fundamentally unfair, and he may not be convicted of reentry after deportation." *Aguilera-Rios*, 769 F.3d at 630 (quoting *Camacho-Lopez*, 450 F.3d at 930). In its original briefing, the government conceded that "[Defendant's] appeal turns on the third prong of this test" and that, if the third prong is satisfied, "his appeal should be granted."

When evaluating whether a defendant "would have had the *right* to be in the United States, as a lawful permanent resident, but for the IJ's determination that he was removable," we have adopted the view that "statutory interpretation decisions are fully retroactive." *Id.* at 633 (applying intervening Supreme Court precedent retroactively); *see also Pallares-Galan*, 359 F.3d at 1103–04 (conducting statutory interpretation and applying it retroactively). As a result, we can identify no bar in 8 U.S.C. § 1326(d) to considering Defendant's challenge on the merits. Here, the § 1326(d) inquiry collapses into a de novo review of Defendant's removability in 1998.

B. *Categorical Analysis*

Defendant argues that his prior conviction did not support removal. To analyze that question, we apply the categorical

approach announced by the Supreme Court in *Taylor v. United States*, 495 U.S. 575 (1990), and its progeny. The analysis proceeds in three steps:

> [W]e inquire first "whether the elements of the crime of conviction sufficiently match the elements of the generic federal crime." If the statute is overbroad and thus not a categorical match, we next ask whether the statute's elements are also an indivisible set. Finally, if the statute is divisible, then the modified categorical approach applies and "a sentencing court looks to a limited class of documents to determine what crime, with what elements, a defendant was convicted of."

*United States v. Arriaga-Pinon*, 852 F.3d 1195, 1198–99 (9th Cir. 2017) (alterations omitted) (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2248–49 (2016)).

1.  *Overbreadth*

In determining whether the statute of conviction "categorically qualifies as a predicate offense" for immigration purposes, "we focus solely on whether the elements of the statute of conviction match the elements of the identified qualifying federal offense." *Id.* at 1199 (citing *Taylor*, 495 U.S. at 600–01). If the elements match, Defendant's removal order was proper. But if the statute of conviction "criminalizes conduct that would not qualify as a federal predicate offense, then the offense does not categorically qualify as a proper predicate offense." *Id.*

Defendant was convicted of generic federal conspiracy in violation of 18 U.S.C. § 371.[1]  The object of that conspiracy was the unlicensed export of defense articles in violation of 22 U.S.C. § 2778(b)(2), which provides:

> [N]o defense articles or defense services designated by the President under [the United States Munitions List] may be exported or imported without a license . . . .

Willful violation of this provision is a federal crime.  *Id.* § 2778(c).  The Munitions List referenced in § 2778 includes both firearms and ammunition, but also a vast array of other items, including "underwater hardware" and various chemicals and biological materials.  22 C.F.R. § 121.1.

The IJ held that Defendant's conviction constituted two generic offenses, each justifying removability under the INA. First, the IJ held that the crime of conviction was an "aggravated felony," which the INA defines as (among other things) a "conspiracy to commit" "illicit trafficking in firearms or destructive devices (as defined in [18 U.S.C. § 921])."  8 U.S.C. § 1101(a)(43)(U), (C).  The referenced provision defines a "firearm" in relevant part as "any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3).  Second, the IJ held that

---

[1] In addition to arguing that 22 U.S.C. § 2778 is overbroad and indivisible, Defendant argues, in the alternative, that the generic conspiracy statute itself is indivisible, precluding a "second step" analysis of § 2778, the conspiracy's object offense.  Because, as explained below, we hold that § 2778 is overbroad and indivisible, we decline to reach Defendant's argument concerning the conspiracy statute.

Defendant's prior conviction was a "firearm offense[]," which includes conspiring to "purchase[], sell[], offer[] for sale, exchang[e], us[e], own[], possess[], or carry[] . . . any weapon, part, or accessory which is a firearm."  8 U.S.C. § 1227(a)(2)(C).

The elements of 22 U.S.C. § 2778 "sweep[] more broadly" than the elements of the generic federal aggravated felony or firearms offenses.  *Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013).  By incorporating the entire Munitions List, § 2778 criminalizes unlicensed export of a broad range of "munitions," such as "underwater hardware"; neither generic federal definition speaks to most of the items on that list.  Thus, Defendant's underlying conviction "does not categorically qualify as a proper predicate offense." *Arriaga-Pinon*, 852 F.3d at 1199; *accord United States v. Guillen-Cruz*, 853 F.3d 768, 773 (5th Cir. 2017).

### 2. *Divisibility*

The next step requires determining whether Defendant's underlying statute of conviction "contains a single, indivisible set of elements."  *Arriaga-Pinon*, 852 F.3d at 1199.  "Only divisible statutes are subject to the modified categorical approach."  *Sandoval v. Yates*, 847 F.3d 697, 704 (9th Cir. 2017).  Here, we must decide whether the many items on the Munitions List constitute alternative *elements* of 22 U.S.C. § 2778, or merely list alternative *means* of committing a single crime.  *See Mathis*, 136 S. Ct. at 2256 (explaining that, when "faced with an alternatively phrased statute," courts must "determine whether its listed items are elements or means").  "[A] single element must be part of the charged offense with which a jury necessarily found the defendant

guilty." *Almanza-Arenas v. Lynch*, 815 F.3d 469, 477 (9th Cir. 2016) (en banc) (citing *Taylor*, 495 U.S. at 602).

We begin by considering the statute's text. *See id.* We may also consult court decisions interpreting the statute. *Mathis*, 136 S. Ct. at 2256 (discussing "authoritative sources of state law"); *Sandoval*, 847 F.3d at 704 ("[A] court looks first to the statute itself and then to the case law interpreting it."). But if these sources are not dispositive, we may "peek at the record documents [for] the sole and limited purpose of determining whether the listed items are elements of the offense." *Mathis*, 136 S. Ct. at 2256–57 (brackets omitted) (quoting *Rendon v. Holder*, 782 F.3d 466, 473–74 (9th Cir. 2015) (Kozinski, J., dissenting from denial of reh'g en banc)). If the text is drafted with alternative elements, effectively creating "several different crimes," *Descamps*, 133 S. Ct. at 2285 & n.2 (internal quotation marks and ellipsis omitted), the statute is divisible, *Mathis*, 136 S. Ct. at 2256.

Section 2778(b)(2) provides that "no defense articles or defense services designated by the President [on the Munitions List] may be exported or imported without a license." 22 U.S.C. § 2778(b)(2). Any person who violates § 2778(b)(2), or "any rule or regulation issued under th[at] section," may be fined not more than $1 million or imprisoned for not more than 20 years, or both. *Id.* § 2778(c). We know of no binding caselaw resolving whether a jury must specifically decide *which* defense article a § 2778 defendant exported without a license. In an earlier case, we noted that "the elements of an export control violation under 22 U.S.C. § 2778 are as follows: the (1) willful (2) export or attempted export (3) of articles listed on the [Munitions List] (4) without a license." *United States v. Chi Mak*, 683 F.3d 1126, 1131 (9th Cir. 2012) (citing *Kuhali v. Reno*, 266 F.3d

93, 104 (2d Cir. 2001)); *see also United States v. Covarrubias*, 94 F.3d 172, 175 (5th Cir. 1996) (per curiam) (same); *United States v. Murphy*, 852 F.2d 1, 6 (1st Cir. 1988) (same).  Despite our generalized treatment of the "article" element in *Chi Mak*, the jury charge in that case specifically asked the jurors to find that the defendant had exported "technical data."    683 F.3d at 1132.    Because of the ambiguity, that case does not resolve the unanimity question before us.  *See also United States v. Bishop*, 740 F.3d 927, 931 (4th Cir. 2014) (describing a § 2778 indictment charging the specific ammunition that the defendant attempted to export).[2]

Faced with a lack of clarity, we may "peek" at the indictment for insight into the element-or-means distinction. *Mathis*, 136 S. Ct. at 2256–57.  Discussing the Iowa burglary statute at issue in *Mathis*, the Supreme Court explained that, if "one count of an indictment and correlative jury instructions charge a defendant with burgling a 'building, structure, or vehicle'—thus reiterating all the terms of Iowa's law," it would be "as clear an indication as any that each

---

[2] Before *Mathis*, the Fifth Circuit had held that a conviction under 18 U.S.C. § 554 for violating 22 U.S.C. § 2778 was divisible, *Franco-Casasola v. Holder*, 773 F.3d 33, 37–38 (5th Cir. 2014), but as we pointed out in *Almanza-Arenas*, that court "ha[d] not addressed the elements versus means distinction, but rather seem[ed] to apply the modified approach to all disjunctive subsections."  815 F.3d at 480 n.17.  More recently, the Fifth Circuit held that § 2778 was not an aggravated felony under 8 U.S.C. § 1101(a)(43)(C).  *Guillen-Cruz*, 853 F.3d at 771.  The court reached that holding in the alternative.  First, under the modified categorical approach, the defendant did not plead guilty to exporting an item on the munitions list.  *Id.* at 772–73.  Second, the court held that the conviction was not an aggravated felony under the categorical approach, though it did not reach the divisibility prong.  *Id.* at 773.  As explained, we employ different reasoning here.

alternative is only a possible means of commission, not an element that the prosecutor must prove to a jury beyond a reasonable doubt." *Id.* at 2257 (citing *Descamps*, 133 S. Ct. at 2290). On the other hand, "an indictment and jury instructions could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime." *Id.* Here, the count to which Defendant pleaded guilty alleged a conspiracy to export "defense articles, that is, firearms and ammunition, which were designated as defense articles on the United States Munitions List." That *both* defense articles were charged in a single count is telling: although a count joining two or more distinct offenses is duplicitous, "there is no bar to stating a charge in a single count if a statute is read to create a single crime but provides for various ways to commit it." 1A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 142 (4th ed.). Taking *Mathis* at its word, the indictment combining more than one Munitions List item into a single count "is as clear an indication as any that each alternative is only a possible means of commission, not an element." 136 S. Ct. at 2257. But to the extent that these materials do not "speak plainly" enough, we cannot "satisfy '*Taylor*'s demand for certainty' when determining whether a defendant was convicted of a generic offense." *Id.* (quoting *Shepard v. United States*, 544 U.S. 13, 21 (2005)); *see also Arriaga-Pinon*, 852 F.3d at 1201 (Thomas, C.J., concurring) (noting that the "focus of *Mathis* was the determination of that 'certainty' in deciding whether the statute of conviction was divisible"). This reasoning means that the statute of conviction was not divisible, ending our analysis. Thus, we do not proceed to the modified categorical approach.

CONCLUSION

Because the statute was overbroad and indivisible, Defendant's conviction under 22 U.S.C. § 2778 could not serve as a proper predicate for removal—either as an aggravated felony or a firearms offense. Accordingly, we **REVERSE** and **REMAND** with instructions to dismiss the indictment.

---

GRABER, Circuit Judge, with whom McKEOWN, Circuit Judge, and LYNN, Chief District Judge, join, concurring:

I concur in the opinion because it faithfully applies the law of our circuit. I write separately to express my view that our law with respect to the scope of collateral challenges under 8 U.S.C. § 1326(d) has strayed increasingly far from the statutory text and that we are out of step with our sister circuits' correct interpretation. For that reason, we should rehear this case en banc to correct our course.

The panel opinion sets forth the background of this case. I emphasize only one aspect of the facts. While incarcerated in 1998 after pleading guilty to a one-count indictment for federal conspiracy, Defendant Jose Ochoa was served with a notice to appear. The notice specifically charged that Defendant's conspiracy conviction constituted both an aggravated felony and a firearms offense under the Immigration and Nationality Act. At his 1999 hearing, the immigration judge ("IJ") repeatedly apprised Defendant of his appellate rights, both orally and in writing. The IJ determined, on the record, that Defendant's conviction matched the two removability categories contained in the

notice to appear. And after being offered the opportunity to appeal or, instead, to accept the decision, Defendant chose to accept the decision. After completing his prison sentence for the underlying crime, he was removed from the United States.

It was not until 2014, after he was indicted for illegal reentry, that Defendant first challenged the IJ's conclusion that his conspiracy conviction was a categorical match to the aggravated felony and firearms offense provisions in the immigration statutes.

A. *The Collateral Attack Provision*

Defendant challenges his illegal reentry conviction by invoking the "collateral attack" provision of the illegal reentry statute:

> In a criminal proceeding under this section, an alien may not challenge the validity of the deportation order described in subsection (a)(1) or subsection (b) unless the alien demonstrates that—
>
> (1) the alien exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived the alien of the opportunity for judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). An order is "fundamentally unfair" under (d)(3) if "(1) [a defendant's] due process rights were violated by defects in [the] underlying deportation proceeding, and (2) [the defendant] suffered prejudice as a result of the defects." *United States v. Garcia-Martinez*, 228 F.3d 956, 960 (9th Cir. 2000) (internal quotation marks omitted). Subsection (d) was "added in direct response to [*United States v. Mendoza-Lopez*, 481 U.S. 828 (1987)]." *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1082 n.6 (9th Cir. 2011). Prior to *Mendoza-Lopez*, it was not clear under what circumstances, if any, an illegal reentry defendant could challenge the underlying "order of deportation" when the "prior deportation is an element of the crime." 481 U.S. at 833. That decision made clear that due process requires "*some* meaningful review of the administrative proceeding," *id.* at 837–38, which the statute now affords.

## B. *The Meaning of § 1326(d)(1) and (2)*

Section 1326(d) places the burden on the alien to demonstrate three things in order to challenge collaterally the validity of the deportation order underlying a charge of illegal reentry. By using the conjunction "and," Congress signified that the alien must establish that all three conditions are met. *See United States v. Soto-Mateo*, 799 F.3d 117, 120 (1st Cir. 2015) (noting that "[t]he elements of 1326(d) are conjunctive, and an appellant must satisfy all of those elements in order to prevail"), *cert. denied*, 136 S. Ct. 1236 (2016); *United States v. Wilson*, 316 F.3d 506, 509 (4th Cir. 2003) (same); *United States v. Fernandez-Antonia*, 278 F.3d 150, 157 (2d Cir. 2002) (same).

The text of the statute plainly contains two different kinds of provisions. As noted, paragraph (d)(3) is substantive. A

deportation order may be challenged if the entry of the order was "fundamentally unfair," that is, if it violated due process and prejudiced the alien. *Garcia-Martinez*, 228 F.3d at 960.

But paragraphs (d)(1) and (2) describe purely *procedural* criteria. The alien is required to have exhausted any available administrative remedies, and "the deportation proceedings at which the order was issued improperly deprived the alien of the *opportunity* for judicial review." 8 U.S.C. § 1326(d)(2) (emphasis added). Subsection (d) is designed to allow collateral attack only as a safety valve for those who *could not* seek judicial review at the time the original removal order issued.

Here, it is clear that Defendant cannot fulfill the terms of the statute. He had an opportunity to seek administrative and judicial review. He knew that he had the opportunity, because the IJ explained his appellate rights accurately, both orally and in writing. An appeal would have allowed the agency and the courts to consider on the merits the arguments that he now makes. Whether those arguments would have succeeded at the time is beside the point; the statute disallows a collateral attack if Defendant had the *opportunity* to obtain administrative and judicial review and thus the *opportunity* to challenge the categorization of his conviction as an aggravated felony and a firearms offense. He simply decided to waive his right to appeal.

As I will explain, though, our court—unlike our sister circuits—has ignored the procedural focus of paragraphs (d)(1) and (2) and essentially read them out of the statute. Partly as a consequence of failing to demand adherence to (d)(1) and (2), our court has made a second error: labeling as "fundamentally unfair" a decision that was *correct* under

extant precedent but as to which the governing law changed later. The history of how the demise of paragraphs (d)(1) and (2) occurred, step by step like a frog subjected to increasingly hot water, will be recounted below.

## C. *Discretionary Relief*

We have long held that, when an IJ erroneously informs an alien that he or she is ineligible for discretionary relief, the first two prongs of § 1326(d) are satisfied and that, under § 1326(d)(3), the alien's due process rights were violated; the remaining question is whether the alien has demonstrated the prejudice required under § 1326(d)(3). For example, in *United States v. Muro-Inclan*, 249 F.3d 1180, 1181 (9th Cir. 2001), an illegal reentry defendant was not informed of his "possible eligibility for a waiver of deportation" at his removal hearing. On collateral attack of that removal order, we held that "a waiver is not 'considered and intelligent' when 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the Immigration Judge fails to 'advise the alien of this possibility and give him the opportunity to develop the issue.'" *Id.* at 1183 (quoting *United States v. Arrieta*, 224 F.3d 1076, 1079 (9th Cir. 2000)). In that case, despite the lack of a knowing and intelligent appellate waiver, we could not call the order "fundamentally unfair" under § 1326(d)(3). *Id.* at 1185–86.

Even in this analysis, our court is an outlier. Several years ago, we noted that our precedents characterizing "an IJ's failure to inform an alien of possible eligibility for discretionary relief [as] a due process violation" take a minority position. *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 n.2 (9th Cir. 2010) (en banc). Although we and the Second Circuit hold this view, the Third, Fourth,

Fifth, Sixth, Seventh, Eighth, and Tenth Circuits do not appear to consider such failures to be due process violations. *Id.*[1] The First Circuit has now adopted the majority position as well. *See Soto-Mateo*, 799 F.3d at 123 (joining "a majority of circuits [that] have rejected the proposition that there is a constitutional right to be informed of eligibility for—or to be considered for—discretionary relief" (quoting *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1020 (7th Cir. 2006)); *see also United States v. Cordova-Soto*, 804 F.3d 714, 723 (5th Cir. 2015) (describing the "majority of circuits," but not the Ninth, as finding no constitutional right to be informed of eligibility for discretionary relief), *cert. denied*, 136 S. Ct. 2507 (2016); *United States v. Torres*, 383 F.3d 92, 104 (3d Cir. 2004) (noting that failing to apprise an alien of discretionary relief does not violate due process, just as "mere errors of state law" do not violate due process in habeas cases (internal quotation marks omitted)).

D. *Plenary Legal Review*

Of greater concern to me, however, are the significant additional steps that we have taken, beyond constitutionalizing the right to be informed of discretionary

---

[1] The cases we cited as taking the opposite view are *United States v. Santiago-Ochoa*, 447 F.3d 1015, 1020 (7th Cir. 2006) (stating that an alien does not have a constitutional right to be informed of eligibility for discretionary relief); *Bonhometre v. Gonzales*, 414 F.3d 442, 448 n.9 (3d Cir. 2005) (same); *United States v. Aguirre-Tello*, 353 F.3d 1199, 1205 (10th Cir. 2004) (en banc) (same); *United States v. Lopez-Ortiz*, 313 F.3d 225, 231 (5th Cir. 2002) (same); *see also Smith v. Ashcroft*, 295 F.3d 425, 430 (4th Cir. 2002) (stating that an alien's eligibility for discretionary relief is not a constitutionally protected interest); *Escudero-Corona v. INS*, 244 F.3d 608, 615 (8th Cir. 2001) (same); *Ashki v. INS*, 233 F.3d 913, 921 (6th Cir. 2000) (same).

relief. In particular, we have made two innovative jurisprudential moves. First, our precedents permit the retroactive application of intervening changes in law to an underlying removal proceeding, so that the IJ's then-correct decision is rendered incorrect in hindsight—even when the change in law is announced in our own opinion adjudicating the collateral attack. Second, we also have permitted an illegal reentry defendant to attack collaterally not just the failure of the IJ to explain the potential availability of discretionary relief, but also the very ground on which the alien was removed. In so doing, we characterize a removal order as "fundamentally unfair" under 8 U.S.C. § 1326(d)(3)—finding that the order violates due process and causes prejudice—merely because we have subsequently identified a legal error. Those two innovations combine to compel the result in this case.

Move number one. In *United States v. Pallares-Galan*, 359 F.3d 1088 (9th Cir. 2004), the defendant in an illegal reentry appeal litigated both the exhaustion issue under § 1326(d) and the question whether his underlying conviction actually constituted an aggravated felony under the modified categorical approach. The defendant had been convicted of several state crimes, and the INS initiated removal proceedings. *Id.* at 1092. The IJ ruled that one of the defendant's convictions was an aggravated felony, and the defendant waived his right to appeal. *Id.* at 1093. After his removal, the defendant was arrested and charged with illegal reentry. *Id.* He argued that his conviction for a state misdemeanor charge was not an aggravated felony as the IJ had declared. *Id.*

We held that the defendant's waiver of his right to appeal "was not 'considered and intelligent' because the IJ

erroneously informed him that he was not eligible for relief from deportation on account of his 1999 state misdemeanor [conviction]." *Id.* at 1096. We reasoned that, "[w]here 'the record contains an inference that the petitioner is eligible for relief from deportation,' but the IJ fails to 'advise the alien of this possibility and give him the opportunity to develop the issue,' we do not consider an alien's waiver of his right to appeal his deportation order to be 'considered and intelligent.'" *Id.* (quoting *Muro-Inclan*, 249 F.3d at 1182). That passage applied our circuit's view, described above, that due process requires the IJ to apprise aliens of possible *discretionary* relief. But I wish to emphasize our method for locating such an "inference" in the record: We conducted the modified categorical analysis in the same decision, decided that the defendant's underlying conviction was not a categorical match to an aggravated felony, and only then held that the defendant's waiver was not "considered and intelligent." *Id.* at 1099–1101. In other words, we used our own, retroactively applied view of the categorical analysis, on the merits, to justify classifying the prior appellate waiver as not "considered and intelligent"—a classic "bootstrapping" approach.

In effect, we held that a substantive error in the IJ's legal analysis—raised and discovered only on collateral attack—satisfies the first two prongs of § 1326(d). *Pallares-Galan*, 359 F.3d at 1104. That result is difficult to square with the requirements of § 1326(d)(1) and (2), which are designed to require that merits arguments be presented to the IJ and argued on appeal in the first instance.

In move number two, we have gone further still. When a collateral challenge implicates an alien's removability itself, we subsume the "fundamental unfairness" prong of

§ 1326(d)(3) entirely within our retroactive, de novo legal analysis. For example, in *United States v. Camacho-Lopez*, 450 F.3d 928, 929 (9th Cir. 2006), a legal permanent resident was convicted of "vehicular manslaughter with gross negligence, in violation of California Penal Code section 191.5(a)," served with a notice to appear alleging removability for an aggravated felony, and ordered removed; he knew about, but waived, his right to appeal. When the defendant was later found in the United States and charged with illegal reentry under § 1326, he moved to dismiss the indictment, arguing that intervening legal developments clarified that his conviction was not for an aggravated felony. *Id.* Citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004), and *Lara-Cazares v. Gonzales*, 408 F.3d 1217 (9th Cir. 2005)—decisions rendered six and seven years after the defendant's removal order issued—we agreed. *Camacho-Lopez*, 450 F.3d at 929–30. We noted the government's concession that those later decisions applied to the 1998 deportation hearing and that the defendant was both "excused from the exhaustion requirement" and "deprived of a meaningful opportunity for judicial review" within the meaning of § 1326(d)(1) and (2). *Id.* at 930. Addressing the final "fundamentally unfair" prong in § 1326(d)(3), we held that, because the defendant was charged with removability "*only* for having committed an aggravated felony," and intervening cases clarified that his crime was not an aggravated felony, he "was removed when he should not have been and clearly suffered prejudice." *Id.* We reversed and remanded with instructions to dismiss the indictment. *Id.* The intervening change in law satisfied the § 1326(d)(3) requirement that the defendant show a due process violation, and we assumed prejudice from the error.

Reading the cases together, the law of our circuit is that an illegal reentry defendant may invoke later-decided cases

to attack an IJ's finding of removability.[2]  *See United States v. Aguilera-Rios*, 769 F.3d 626, 631 (9th Cir. 2014) (so holding).   Those later-decided cases might include a categorical analysis conducted in another section of the same opinion adjudicating a collateral attack—just as we do in this case. *Pallares-Galan*, 359 F.3d at 1099–1101.  And if we ultimately agree with the illegal reentry defendant on the merits of his collateral attack, we find the removal order fundamentally unfair, assuming that it rested on no other ground. *Camacho-Lopez*, 450 F.3d at 930.  In sum, if we conclude, years later in a collateral attack, employing de novo review, that the IJ erred in finding removability, we hold that all three of § 1326(d)'s requirements are met, even if the defendant could have exhausted administrative remedies, could have appealed the removal order, knew that appeal was available, and failed to appeal.  Our progress toward this point was incremental, but the result—a cooked frog—is incompatible with the statute.

E.  *Other courts' approaches*

Other circuits have not eroded § 1326(d) to such a degree. For example, in *Soto-Mateo*, the First Circuit noted that, "when 'performing the collateral attack analysis under § 1326(d), an inquiring court ordinarily should address the initial [(d)(1)] test of exhaustion of administrative remedies before going on to the other two tests.'"  799 F.3d at 120

---

[2] As we pointed out in *Aguilera-Rios*, 769 F.3d at 632–33, we have apparently carved out a narrow exception to full retroactivity when the only issue is whether the alien was eligible for relief from removal, as distinct from whether the alien was removable at all.  *See United States v. Gomez*, 757 F.3d 885, 899 (9th Cir. 2014) (considering the law at the time of the defendant's removal order to determine eligibility for *relief* from removal).

(brackets omitted) (quoting *United States v. DeLeon*, 444 F.3d 41, 45 (1st Cir. 2006)). The court held that the defendant "did not exhaust available administrative remedies" before the IJ, "waived his right to appeal," and could not avoid that default by "asserting that his waiver was neither knowing nor intelligent." *Id.* He "plainly knew what he was doing" when he waived his appellate rights. *Id.* at 122. Addressing the argument that the defendant would never have waived his appeal "if he had known that he was not removable as an aggravated felon," the court held, first, that the unsettled state of the law on whether his conviction was an aggravated felony did not matter: "A waiver of rights based on a reasonable interpretation of existing law is not rendered faulty by later jurisprudential developments." *Id.* at 123 (citing *Brady v. United States*, 397 U.S. 742, 757 (1970)). The court denied this challenge without "reach[ing] the question of whether he satisfied either the judicial review requirement of [§] 1326(d)(2) or the fundamental fairness requirement of [§] 1326(d)(3)." *Id.*

Other courts also read the § 1326(d) requirements differently than we do. *See United States v. Gil-Lopez*, 825 F.3d 819, 820 (7th Cir. 2016) (refusing to consider an argument that the conviction was not for an aggravated felony because a § 1326 defendant signed an appellate waiver and thus did not exhaust remedies); *United States v. Villanueva-Diaz*, 634 F.3d 844, 851–52 (5th Cir. 2011) (rejecting a collateral attack because, though intervening decision made the conviction not a removable offense, the "deportation proceedings were not 'fundamentally unfair'"); *United States v. Rodriguez*, 420 F.3d 831, 834 (8th Cir. 2005) (refusing to entertain a collateral attack because "[a] subsequent change in the law does not render [the defendant's] waiver of his right to appeal 'not considered or intelligent'"); *United States*

*v. Rivera-Nevarez*, 418 F.3d 1104, 1105–06 (10th Cir. 2005) (agreeing with the defendant that later-decided statutory interpretation cases were "fully retroactive," but holding that the defendant still could not show he was deprived of opportunity for judicial review under § 1326(d)(2), so the IJ's legal error concerning removability was harmless)[3]; *United States v. Martinez-Rocha*, 337 F.3d 566, 569–70 (6th Cir. 2003) (finding the § 1326(d) requirements unsatisfied when defendant signed an appellate waiver, noting that "a waiver need not be the best choice under the circumstances in order for it to be 'considered and intelligent'"). We are apparently alone, on the wrong side of an (at least) 6-to-1 circuit split.

This state of affairs is especially surprising because, elsewhere, we readily enforce appellate waivers. In criminal appeals, for example, we foreclose challenges to a sentence when the defendant waived the right to appeal the Sentencing Guidelines determination, because that the alternative "would render meaningless the express waiver of the right" to bring such a challenge. *United States v. Medina-Carrasco*, 815 F.3d 457, 462 (9th Cir. 2016). Even if a Guidelines calculation was seemingly incorrect, setting aside an explicit waiver "would nullify the waiver based on the very sort of

---

[3] This conclusion runs directly contrary to our court's decision in *Aguilera-Rios*, which rejected the government's argument that the removal order was valid because it rested on governing law at the time, and only subsequent, intervening decisions invalidated it. We applied the same retroactivity rule that *Rivera-Nevarez* invoked—even citing that case, 769 F.3d at 631—and held that, at least where intervening statutory interpretation law rendered an alien "*not removable*" as of the time of the IJ hearing, that intervening law would be applied retroactively. *Id.* at 632–33. We never mentioned that the Tenth Circuit in *Rivera-Nevarez* ultimately rejected the retroactive legal challenge because § 1326(d) still barred it, rendering the original legal error harmless.

claim it was intended to waive." *Id.* (quoting *United States v. Smith*, 500 F.3d 1206, 1213 (10th Cir. 2007)). "We will enforce a valid waiver even if the claims that could have been made on appeal absent that waiver appear meritorious, because the whole point of a waiver is the relinquishment of claims regardless of their merit." *Id.* at 462–63 (internal quotation marks and emphasis omitted).

## F.  *Conclusion*

By permitting collateral legal challenges to an IJ's removability determination in the way that we do, we retroactively label erroneous-only-in-hindsight (but un-appealed) categorical determinations as "fundamentally unfair," and as satisfying all three requirements of § 1326(d). *See, e.g.*, *Camacho-Lopez*, 450 F.3d at 930. Our precedent has the effect of nullifying the *procedural* requirements of § 1326(d)(1) and (2) and creating in their place a new, substantive right to retroactive de novo review, thereby undermining the finality interests the statute was designed to protect. These anomalies call for en banc consideration to bring our jurisprudence in line with the statute and the other circuits.