**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

JOSE GAMBINO-RUIZ,

*Defendant-Appellant*.

Nos.  21-50303
21-50305

D.C. Nos.
3:20-cr-03124-LAB-1
3:20-cr-10144-LAB-1

OPINION

Appeal from the United States District Court
for the Southern District of California
Larry A. Burns, District Judge, Presiding

Argued and Submitted November 15, 2023
Pasadena, California

Filed January 24, 2024

Before:  Barrington D. Parker, Jr.,[*] Jay S. Bybee, and
Kenneth K. Lee, Circuit Judges.

---

[*] The Honorable Barrington D. Parker, Jr., United States Circuit Judge for the U.S. Court of Appeals for the Second Circuit, sitting by designation.

Opinion by Judge Bybee;
Concurrence by Judge Lee

## SUMMARY[**]

### Criminal Law

The panel affirmed José Gambino-Ruiz's conviction and sentence for illegal reentry under 8 U.S.C. § 1326 in a case in which he argued (1) the removal order that served as the basis for that charge—an expedited removal—was improper under the Immigration and Nationality Act; and (2) the district judge considered impermissible factors in denying a downward sentencing adjustment for acceptance of responsibility.

In his collateral attack under 8 U.S.C. § 1326(d), Gambino-Ruiz maintained that his 2013 removal violated his due process rights because he was not inadmissible on the grounds that authorize expedited removal, and thus could not be placed in expedited removal proceedings.

The panel addressed two independent conditions set forth in 8 U.S.C. § 1225(b)(1)(A)(i) that must be satisfied for an alien to be subject to expedited removal.

The panel took as admitted that Gambino-Ruiz was, at the time of his removal, designated by the Attorney General—consistent with statutory limits on designation—as subject to expedited removal, and was thus an alien

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

"described in" 8 U.S.C. § 1225(b)(1)(A)(iii), thereby satisfying the first condition.

The second condition requires that an immigration officer determine that the alien being examined is inadmissible, as relevant here, under 8 U.S.C. § 1182(a)(7). Gambino-Ruiz contended that he cannot be inadmissible under § 1182(a)(7) because he never applied for admission. The panel noted that § 1225(b)(1)(A)(iii) authorizes the government to treat designated aliens as if they were "arriving in the United States" for purposes of determining their admissibility, and that if Gambino-Ruiz was the functional equivalent of an arriving alien when he crossed the border, as Congress has deemed, then he was at that point also "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Lacking valid entry documents at the moment of his constructive application, Gambino-Ruiz was therefore inadmissible under § 1182(a)(7), satisfying the second condition. The panel explained that *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc), which merely rejected the view that an alien remains in a perpetual state of applying for admission, is distinguishable.

The panel held that the government thus did not violate Gambino-Ruiz's due process rights when it removed him via expedited proceedings in 2013, and he was properly convicted of illegal reentry under § 1326.

Gambino-Ruiz argued that by focusing on Gambino-Ruiz's post-trial statements and his decision to proceed with a jury trial, the district court considered impermissible factors in deciding whether to grant a downward adjustment at sentencing for acceptance of responsibility under U.S.S.G.

§ 3E1.1(a) while ignoring the factors laid out in the Sentencing Guidelines. Disagreeing and affirming the sentence, the panel was not persuaded that this was the rare circumstance where the adjustment for acceptance of responsibility is due after the defendant has proceeded to trial.

Concurring, Judge Lee wrote separately to point out that Gambino-Ruiz's collateral attack under § 1326(d) fails for another reason: Even if the panel had concluded that the removal violated Gambino-Ruiz's due process rights, he has not established any prejudice. Judge Lee wrote that this court has on the books perhaps an accidental precedent that suggests an inadvertent shift from an individualized prejudice inquiry to a presumption of prejudice for collateral attacks under § 1326(d). Judge Lee wrote that even if the panel must follow this accidental precedent, it should construe it narrowly and presume prejudice in only rare cases.

---

## COUNSEL

Kara Hartzler (argued), Federal Defenders of San Diego Inc, San Diego, California, for Defendant-Appellant.

Zachary J. Howe (argued), Lyndzie Marie Carter, and Meghan Heesch, Assistant United States Attorneys; Daniel E. Zipp, Assistant United States Attorney, Appellate Section Chief, Criminal Division; Randy S. Grossman, United States Attorney; United States Department of Justice, San Diego, California, for Plaintiff-Appellee.

Charles Roth, National Immigrant Justice Center, Chicago, Illinois, for Amici Curiae Asian Pacific Institute on Gender-

Based Violence, Asista Immigration Assistance, National Coalition Against Domestic Violence, National Domestic Violence Hotline, National Immigrant Justice Center, and Tahirh Justice Center.

## OPINION

BYBEE, J., Circuit Judge:

Defendant-Appellant José Gambino-Ruiz was convicted of illegal reentry under 8 U.S.C. § 1326. He raises two issues in this appeal. First, Gambino-Ruiz argues that the removal order that served as the basis for that charge—an expedited removal—was improper under the Immigration and Nationality Act ("INA"). Second, Gambino-Ruiz appeals the district court's denial of a downward sentencing adjustment for acceptance of responsibility, on the theory that the district judge considered impermissible factors in deciding whether to grant that adjustment. We affirm Gambino-Ruiz's conviction and his sentence.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Gambino-Ruiz is a native and citizen of Mexico who first entered the United States sometime near the beginning of March 2013 by illegally crossing the southern border into Arizona, not at a port of entry and without valid documents permitting his admission. Shortly after his arrival, border patrol agents found him near the border. He subsequently confessed that he was an alien not legally admitted to the United States. The immigration officer reviewing his case determined that he was inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I) for lacking a valid entry document at

the time of his application for admission.  Pursuant to 8 U.S.C. § 1225(b)(1)(A)(i), the Department of Homeland Security thus issued an order of expedited removal, and Gambino-Ruiz was deported to Mexico shortly thereafter. This process repeated itself just two months later, when Gambino-Ruiz again entered the United States by illegally crossing the border, whereupon he was arrested and again deported following expedited removal proceedings.

In September 2020, Gambino-Ruiz once again entered the United States without admission, this time through a mountainous region along the border between Mexico and California.  When Border Patrol agents apprehended him six miles from the border, he admitted that he had entered illegally.  The United States Attorney's Office then filed an Information with the federal District Court for the Southern District of California, charging Gambino-Ruiz with illegal reentry of a removed alien in violation of 8 U.S.C. § 1326(a) and (b).

Prior to trial, Gambino-Ruiz moved for dismissal of the charge.  He argued that the government could not charge him as an alien previously removed because his expedited removal in 2013 was invalid under this Court's decision in *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc).[1] The government opposed this motion, submitting that the Attorney General has statutory discretion to apply expedited

---

[1] The Information filed by the government did not specify which of Gambino-Ruiz's removals served as predicate for the charge of illegal reentry.  It alluded to some removal that occurred "subsequent to July 1, 2019," suggesting that the later removal formed the basis for the charge. However, when Gambino-Ruiz challenged the information based on the validity of his 2013 removals, the government did not contest that the 2013 removals were the predicates for the illegal reentry charge, arguing instead that those removals were valid.

removal to certain aliens found illegally entering the country at the border. The district court denied Gambino-Ruiz's motion to dismiss. Gambino-Ruiz also moved to suppress his admissions to the Border Patrol agents who apprehended him—asserting that they had been taken in violation of his *Miranda* rights—and the district court likewise denied this motion after a hearing on the issue. The case then proceeded to trial, which lasted one day. Gambino-Ruiz called no witnesses and submitted no exhibits. The jury found him guilty.

At sentencing, Gambino-Ruiz requested a downward sentencing adjustment based on his acceptance of responsibility under United States Sentencing Guideline § 3E1.1. The district court denied his request, citing the facts that he had contested his guilt at trial; had shown no contrition; and had elected to go to trial despite the existence of less burdensome alternative proceedings that would have allowed him to preserve legal challenges to his conviction. The court listened as Gambino-Ruiz's counsel enumerated factors that weighed in his favor, such as his initial admissions, his stipulated fingerprints, and the short duration of the trial, but the court did not expressly address those factors in announcing its decision on the adjustment. Gambino-Ruiz was sentenced to 63 months in custody.

This appeal, which challenges both Gambino-Ruiz's conviction under § 1326 and sentence, followed.

## II. STANDARDS OF REVIEW

We have jurisdiction under 28 U.S.C. § 1291 to review the district court's judgment of conviction and its sentence. We review "the denial of a motion to dismiss under 8 U.S.C. § 1326(d) de novo." *United States v. Martinez-Hernandez*, 932 F.3d 1198, 1202 (9th Cir. 2019). We also review de novo

"whether the district court misapprehended the law with respect to the acceptance of responsibility reduction." *United States v. Green*, 940 F.3d 1038, 1041 (9th Cir. 2019).

## III.   ANALYSIS

### A.  *Gambino-Ruiz's Conviction under § 1326*

#### 1.   Statutory Framework

An alien is criminally liable for illegal reentry if he or she "has been . . . deported, or removed . . . and thereafter . . . enters, attempts to enter, or is at any time found in, the United States."  8 U.S.C. § 1326(a).  In a criminal action brought under § 1326, an alien has a right under the Due Process Clause of the Fifth Amendment to collaterally challenge the removal order underlying the charge of illegal reentry.  *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047–48 (9th Cir. 2004) (citing *United States v. Mendoza-Lopez*, 481 U.S. 828, 837–38 (1987)).  Congress codified that right, with certain conditions, at 8 U.S.C. § 1326(d).  To sustain a collateral attack under § 1326(d), the alien must demonstrate that (1) he or she "exhausted any administrative remedies" for relief against the order; (2) the removal proceedings "improperly deprived the alien of the opportunity for judicial review;" and (3) the order was "fundamentally unfair."  *Id.*  The Supreme Court has stated that "each of the[se] statutory requirements . . . is mandatory."  *United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021).

The parties agree that Gambino-Ruiz has satisfied the first two elements of a § 1326(d) collateral attack.  The government concedes that the administrative exhaustion and judicial review prongs are satisfied in the context of expedited removal because neither are available to an alien

so removed. *See United States v. Ochoa-Oregel*, 904 F.3d 682, 685 (9th Cir. 2018) ("An alien who had been removed through expedited removal proceedings automatically satisfies the requirements for exhaustion and deprivation of judicial review."); *United States v. Barajas-Alvarado*, 655 F.3d 1077, 1081–82 (9th Cir. 2011) (holding that Congress has deprived courts of jurisdiction to review a direct appeal from an expedited removal order).

This leaves us with the question of whether Gambino-Ruiz's removal in 2013 through expedited proceedings was "fundamentally unfair." 8 U.S.C. § 1326(d)(3). A removal order is fundamentally unfair if "(1) [an alien]'s due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result." *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004) (alteration in original) (citing *Ubaldo-Figueroa*, 364 F.3d at 1048). Gambino-Ruiz maintains that his 2013 removal violated his due process rights because he was not inadmissible on the grounds that authorize expedited removal, and thus, could not be placed in expedited removal proceedings.

Section 1225(b)(1) governs expedited removals. As relevant here, § 1225(b)(1)(A)(i) provides:

> If an immigration officer determines that an alien . . . who is arriving in the United States or is described in clause (iii) is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) of this title, the officer shall order the alien

removed from the United States without further hearing or review . . . .

8 U.S.C. § 1225(b)(1)(A)(i). The statute sets forth two independent conditions that must be satisfied for an alien to be subject to expedited removal, each of which has two possible avenues for satisfaction. First, the alien must belong to one of two categories: aliens "who [are] arriving in the United States" or aliens "described in clause (iii)." Second, the examining immigration officer must determine that the alien is inadmissible under either of the two specifically enumerated subsections of 8 U.S.C. § 1182. The subsection relevant to this case is § 1182(a)(7), covering the inadmissibility of aliens who lack valid entry documents at the time they apply for admission to the United States.[2]

As to the first condition, the INA itself does not define the precise contours of when an alien "is arriving" in the United States. 8 U.S.C. § 1225(b)(1)(A)(i). But both parties acknowledge that since 1997 the government has defined the term "arriving alien" narrowly to mean "an applicant for admission coming or attempting to come into the United States at a port-of-entry[.]" 8 C.F.R. § 1001.1(q). Gambino-Ruiz clearly does not meet that definition.[3]

---

[2] Section 1182(a)(6)(C) declares inadmissible any alien who makes certain fraudulent or willful misrepresentations in seeking immigration benefits. The government has never alleged that Gambino-Ruiz has engaged in any such misrepresentation, and so this provision is not relevant here.

[3] The Department of Justice first issued its current definition of "arriving alien" shortly after the enactment of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). *See* 62 Fed. Reg. 10,312,

But Gambino-Ruiz does not dispute that he belongs to the second category of alien that satisfies the first condition necessary for expedited removal, namely aliens "described in clause (iii)." 8 U.S.C. § 1225(b)(1)(A)(i). Clause (iii) provides in relevant part:

> (I) In general
>
> The Attorney General may apply clauses (i) and (ii) of this subparagraph to any or all aliens described in subclause (II) as designated by the Attorney General. Such designation shall be in the sole and unreviewable discretion of the Attorney General and may be modified at any time.
>
> (II) Aliens described
>
> An alien described in this clause is an alien . . . who has not been admitted or paroled into the United States, and who has

---

10,312 (Mar. 6, 1997). It explained that "[a]fter carefully considering [several statutory] references [to arriving aliens], the Department felt that the statute seemed to differentiate more clearly between aliens at ports-of-entry and those encountered elsewhere in the United States." *Id.* at 10,312–13. Yet there are at least two provisions in § 1225 that explicitly contemplate that aliens may "arrive[] in the United States (*whether or not at a designated port of arrival* . . . )[.]" 8 U.S.C. § 1225(a)(1) (emphasis added); *see also id.* § 1225(b)(2)(C). Moreover, § 1225(a)(1) seems particularly relevant to § 1225(b)(1) because such arriving aliens "shall be deemed . . . an applicant for admission."

Although this regulation promulgates a perhaps unintuitive interpretation, because the government has given us a plausible reading of the statute that produces the same outcome in this case without disturbing the government's regulatory definition, we have no reason to parse it further.

not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility under this subparagraph.

8 U.S.C. § 1225(b)(1)(A)(iii).[4] Thus, an alien "described in clause (iii)" is one who falls within a class that the Attorney General has designated as subject to expedited removal, provided that the alien has been present in the United States for less than two years and was not admitted or paroled into the United States.

Since conferral of this designatory discretion, the Attorney General and his delegees have largely exercised it narrowly. Not until 2004 did the Attorney General designate aliens who had entered outside a port of entry for expedited removal. 69 Fed. Reg. 48,877, 48,879 (Aug. 11, 2004). When he did so for the first time, he limited his designation to those "encountered within 14 days of entry without inspection and within 100 air miles of any U.S. international land border." *Id.* To avoid expedited removal, the regulation places the burden of proving continuous presence during fourteen days on the alien. *Id.* at 14,880. With the exception of a period from 2019 to 2022, the designation regime established in 2004 has remained in place since its issuance. *See* 87 Fed. Reg. 16,022, 16,024 (Mar. 21, 2022), *rescinding*

---

[4] The responsibilities of the Attorney General under these provisions of the INA were transferred to the Secretary of Homeland Security in the Homeland Security Act of 2002. For convenience, we will continue to refer to the "Attorney General" because that is the official referred to in the INA.

84 Fed. Reg. 35,409, 35,414 (July 23, 2019). Critically for our purposes, it was the rule of designation in force when Gambino-Ruiz was first removed in 2013.

Gambino-Ruiz does not claim that he fell outside the ambit of the Attorney General's designation at the time of his removal. Because that was his burden, we therefore take as admitted that he was designated by the Attorney General—consistent with statutory limits on designation—as subject to expedited removal. He was thus an alien "described in clause (iii)," satisfying the first condition necessary for the government's use of expedited removal proceedings against him. 8 U.S.C. § 1225(b)(1)(A)(i).

The second condition of § 1225(b)(1)(A)(i) requires that an immigration officer determine that the alien being examined is inadmissible, as relevant here, under 8 U.S.C. § 1182(a)(7). Section 1182(a)(7) declares inadmissible any immigrant who "at the time of application for admission" is "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document . . . ." 8 U.S.C. § 1182(a)(7)(A)(i). Gambino-Ruiz admits that he has never possessed a valid document permitting his entrance into the United States. Yet he insists that he cannot be inadmissible under § 1182(a)(7) because he never applied for admission.

At first blush, the INA appears to support Gambino-Ruiz's position. The Act's definitional section provides two relevant definitions. The term "application for admission," it says, "has reference to the application for admission into the United States" rather than application for a visa or some other entry document. 8 U.S.C. § 1101(a)(4). This

definition on its own would offer little guidance in this case. But the same section also defines "admission" as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." *Id.* § 1101(a)(13)(A). This language would seem to suggest that one who, like Gambino-Ruiz, does not seek "lawful entry" but in fact attempts to evade "inspection . . . by an immigration officer" by surreptitiously crossing the border has not applied for "admission."

But this confined interpretation ignores other salient provisions of the INA. Importantly, it ignores the fact that clause (iii), as discussed above, authorizes the Attorney General to "apply clause[] (i)" to properly designated aliens. 8 U.S.C. § 1225(b)(1)(A)(iii). That is, the clause allows the government to treat designated aliens as if they were "arriving in the United States" for purposes of determining their admissibility.[5] And if Gambino-Ruiz was the functional equivalent of an arriving alien when he crossed the border, as Congress has deemed, then he was at that point

---

[5] The statute establishes the legal equivalence of "arriving aliens" and aliens "described in clause (iii)" in several ways. First, as we have explained above, each status is equally and independently sufficient to satisfy the first condition for expedited removal. Second, the heading of the relevant subparagraph states that a single inspection procedure applies to "aliens arriving in the United States and *certain other aliens who have not been admitted or paroled*." 8 U.S.C. § 1225(b)(1) (emphasis added).

For its part, Congress explained in the legislative history to IIRIRA that the provision was primarily targeted at "arriving alien[s]," but "[t]he provisions also may be applied, in the sole and unreviewable discretion of the Attorney General, to an[y] alien" described in subclause (II). H.R. Rep. No. 104-828, at 209 (1996). Congress considered both classes of immigrants to be "aliens who indisputably have no authorization to be admitted to the United States." *Id.*

also "an applicant for admission coming or attempting to come into the United States at a port-of-entry." 8 C.F.R. § 1001.1(q). Lacking valid entry documents at the moment of his constructive application, he was therefore inadmissible under § 1182(a)(7).[6]

Gambino-Ruiz argues that this conclusion is foreclosed by our decision in *Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc). He reads that case as limiting inadmissibility under § 1182(a)(7) to those aliens who actually apply for admission at a port of entry because we interpreted the statutory phrase "time of application for admission" to "refer[] only to the moment in time when the immigrant actually applies for admission into the United States." *Id.* at 927. Because he never sought permission to enter but rather crossed the border between ports of entry, Gambino-Ruiz maintains that he never made an "application for admission." Consequently, he asserts that § 1182(a)(7) has nothing to say about his admissibility.

We reject this reading of our precedent. *Torres* involved a peculiar set of circumstances. Catherine Torres had lawfully entered the Commonwealth of the Northern Mariana Islands ("CNMI") as a guest worker in 1997. *Id.* at

---

[6] We note that the same result might have obtained without such twistification if the government had given a more natural reading to "arriving alien." *See supra* note 3. If Gambino-Ruiz were considered an arriving alien despite his entry outside a designated port, he would be "deemed" an applicant for admission under 8 U.S.C. § 1225(a)(1). Then he would be inadmissible under § 1182(a)(7) for having applied without valid entry documents. We have reasoned along these lines before. *See, e.g.*, *Mendoza-Linares v. Garland*, 51 F.4th 1146, 1148–49 (9th Cir. 2022) (noting that an alien "caught at the border" was "deemed" to be an "applicant for admission" and was therefore inadmissible under § 1182(a)(7)).

923.  At the time, the INA did not apply to CNMI, and CNMI administered its own immigration laws.  But such laws did not confer legal status in the United States on guest workers such as Torres.  *Id.* at 921–22.  In 2011, two years after Congress made the INA effective in CNMI, the Board of Immigration Appeals ("BIA") ordered Torres removed on the theory that she "should be treated as having made a continuing application for admission," and that she lacked a "valid entry document" at "the time of her application for admission" in violation of § 1182(a)(7).  *Id.* at 922.  Granting her petition for review of the BIA's order, we held in an en banc opinion that "the time of application for admission is the time when a noncitizen seeks permission to physically enter United States territory, regardless of whether the noncitizen is seeking entry from outside the country or inside the country at a port of entry."  *Id.* at 924.

In reaching that conclusion, we overruled our decision in *Minto v. Sessions*, a case also involving a noncitizen whose residence in CNMI predated the application of our immigration law there, 854 F.3d 619, 622 (9th Cir. 2017).  *Minto* was the source of the BIA's theory that "any applicant for admission should be treated as having made a continuing application for admission that does not terminate 'until it [is] considered by [an immigration officer].'"  *Torres*, 976 F.3d at 922 (first alteration in original) (quoting *Minto*, 854 F.3d at 624).  Relying on *Minto*, the government in *Torres* claimed that an "application for admission" begins when an alien enters the United States and "*continues* potentially for years or decades, until the immigrant appears before the IJ in removal proceedings."  *See id.* at 926.  Concluding that an "applicant for admission" is not an unbounded class, we said that "inadmissibility must be measured at the point in time that an immigrant actually submits an application for entry

into the United States." *Id.*; *see also id.* at 925 ("[T]his phrase refers to the moment of applying for entry at the border.").

The upshot of our decision in *Torres* was that an alien deemed to be an applicant for admission cannot be held inadmissible under § 1182(a)(7) just because, years later, he is found inside United States territory without documents authorizing his presence. Rather, inadmissibility under that provision depends on whether the alien possessed the necessary documents at the moment he physically applied for admission. Neither Minto nor Torres had ever made such physical application, either "from outside the country or inside the country at a port of entry." *Id.* at 924. But that was because they lawfully entered CNMI before the INA applied there. Effectively, Torres and Minto never crossed the U.S. border; the border crossed them. *Torres* merely rejected the view that an alien remains in a perpetual state of applying for admission.

Gambino-Ruiz stands in an entirely different position because, under statutory authority, the Attorney General designated him as having "appl[ied] for entry at the border," *id.* at 925, by entering illegally "from outside the country," *id.* at 924. That designation placed him into "a fictive legal status," *id.* at 928, as the equivalent of an arriving alien applying for admission at a port of entry, *supra* at pp. 14–15. When Gambino-Ruiz admitted to border patrol agents shortly after his arrival that he lacked valid entry documents at the time he crossed into the United States, he admitted his inadmissibility under § 1182(a)(7). Unlike Torres, however, Gambino-Ruiz was not in danger of the Attorney General treating him as a perpetual applicant for admission because the INA limits the Attorney General's authority to a two-year period after the alien enters the United States. 8 U.S.C.

§ 1225(b)(1)(A)(iii).   And by regulation, the Attorney General has further limited his designation to those aliens found within fourteen days of their illegal entry and within 100 miles of the border.  69 Fed. Reg. at 48,879.

Gambino-Ruiz repeatedly quotes two footnotes from our decision in *Torres*, but neither avails him.  *See Torres*, 976 F.3d at 928–29 nn.12-13.  Although the "historical meaning" of § 1182(a)(7) was that "'an *arriving* alien' [who] lacks valid documents" would be inadmissible, *id.* at 928 n.12 (quoting H.R. Rep. No. 104-828, at 208, 209 (1996)), we have already explained why Gambino-Ruiz is properly treated as if he were arriving under the Attorney General's designatory power.  We also remarked in note 13 that "no case has held that § 1225(b)(1) [the expedited removal provision] allows an immigration officer to apply § 1182(a)(7) to noncitizens who are physically but unlawfully present in the United States."  *Id.* at 929 n.13. But we read this observation as questioning the Attorney General's authority to designate for expedited removal an alien who does not fall within the discretion granted in subclause (II):  someone who has been admitted or paroled or else continuously present for more than two years.[7] Regardless, we did not "resolve the full scope of § 1225(b)(1)(A)(iii)" in *Torres*.  *Id.*  We think it evident from the text of that provision that Gambino-Ruiz was within the limits of the Attorney General's power to designate him as

---

[7] We stated in note 13 that "§ 1182(a)(7) . . . may apply only to noncitizens who are 'arriving in the United States.'" *Torres*, 976 F.3d at 929 n.13 (citing 8 U.S.C. § 1225(b)(1)).  We omitted any reference to the alternative basis for application of § 1182(a)(7)—description in clause (iii)—because *Torres* did not involve expedited removal, much less designation by the Attorney General under clause (iii).

legally equivalent to an arriving alien and therefore within the scope of § 1182(a)(7).

In sum, we conclude that *Torres* stands for the propositions that "an immigrant submits an 'application for admission' at a distinct point in time" and "stretching the phrase 'at the time of application for admission' to refer to a period of years would push the statutory text beyond its breaking point." *Id.* at 926. We can easily distinguish between Gambino-Ruiz, who was properly designated because he was detained near the border shortly after he crossed it, and Torres, who was placed in removal proceedings some thirteen years after she lawfully entered CNMI. We decline to attribute to *Torres* the narrow interpretation of § 1182(a)(7) that Gambino-Ruiz proposes.[8]

\*　　　\*　　　\*

We conclude that Gambino-Ruiz was inadmissible under § 1182(a)(7) and therefore properly subject to expedited removal under § 1225(b)(1)(A)(i). The theory Gambino-Ruiz propounds overreads the significance of our decision in *Torres* and would "create a perverse incentive to enter at an unlawful rather than a lawful location." *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1983 (2020). This

---

[8] Gambino-Ruiz and amici claim that the exception to inadmissibility provided for certain battered women and children in § 1182(a)(6)(A)(ii) would lose all effect if the government could apply § 1182(a)(7) as it has here. We need not decide the contours of § 1182(a)(6)(A)(ii). We note that it is labeled as an "exception" to the general inadmissibility standard set out in § 1182(a)(6)(A)(i), which governs the "time or place" for seeking admission. The only part of § 1182(a)(6) referred to in § 1225(b)(1)(A)(i) is § 1182(a)(6)(C), which addresses fraudulent and willful representation to gain immigration benefits. We therefore doubt that exposure to expedited removal would have any effect on the availability of the exception to those who can properly claim it.

was the precise situation that Congress intended to do away with by enacting the Illegal Immigration Reform and Immigrant Responsibility Act. *Torres*, 976 F.3d at 927–28. We refuse to interpret the INA in a way that would in effect repeal that statutory fix. We hold that the government did not violate Gambino-Ruiz's due process rights when it removed him via expedited proceedings in 2013. He was properly convicted of illegal reentry under 8 U.S.C. § 1326.

## B. *Acceptance of Responsibility*

Gambino-Ruiz also appeals his 63-month sentence, arguing that the district judge erred in denying him a downward adjustment for acceptance of responsibility. He maintains that by focusing on Gambino-Ruiz's post-trial statements and his decision to proceed with a jury trial, the district judge considered impermissible factors in deciding whether to grant the adjustment while ignoring the factors laid out in the Sentencing Guidelines. We disagree and affirm the sentence.

Under the Sentencing Guidelines, a district court has discretion to award a two-level downward adjustment to a defendant who "clearly demonstrates acceptance of responsibility for his offense." U.S. Sent'g Guidelines Manual ("U.S.S.G.") § 3E1.1(a) (U.S. Sent'g Comm'n 2018); *see also United States v. Ramos-Medina*, 706 F.3d 932, 940 (9th Cir. 2013). The Sentencing Commission explained that, although conviction after trial does not "automatically preclude" a defendant from receiving the reduction, only in "rare situations" will a defendant who goes to trial be able to demonstrate acceptance of responsibility. U.S.S.G. § 3E1.1(a) cmt. 2. Such circumstances include "where a defendant goes to trial to assert and preserve issues that do not relate to factual guilt,"

*id.*, and "cases in which the defendant manifests genuine contrition for his acts," *United States v. Rodriguez*, 851 F.3d 931, 949 (9th Cir. 2017).

Although the commentary on the relevant guideline provides a list of "appropriate considerations," it is also clear on this point: the list is non-exhaustive. U.S.S.G. § 3E1.1(a) cmt. 1 (explaining that appropriate considerations "include, but are not limited to" the enumerated factors). The comments further state that when a defendant goes to trial "to assert and preserve issues that do not relate to factual guilt," the decision to grant the adjustment should be "based primarily upon pre-trial statements and conduct." *Id.* We have held that generally the district court should "base[] its final decision on the facts of the case and record as a whole." *United States v. Rojas-Pedroza*, 716 F.3d 1253, 1270 (9th Cir. 2013).

None of the district judge's considerations in this case requires reversal. Gambino-Ruiz objects that the judge took into account the fact that Gambino-Ruiz chose not to make a statement to a probation officer. We have previously pointed to silence not as an indication of guilt but as a reason to find that evidence of acceptance is lacking. *See Rodriguez*, 851 F.3d at 949. The district court cited Gambino-Ruiz's decision to forgo less rigorous avenues of preserving legal challenges to the charge against him, such as a conditional plea, a bench trial, or a stipulated-facts trial.**9**

---

**9** A district judge "cannot rely upon the fact that a defendant refuses to plead guilty and insists on his right to trial as the basis for denying an acceptance of responsibility adjustment." *United States v. Mohrbacher*, 182 F.3d 1041, 1052 (9th Cir. 1999). Here, the district judge took pains to clarify that he was not penalizing Gambino-Ruiz for exercising his

We have cited with approval cases where the trial court considered whether the defendant "required the district court to expend additional resources conducting a bench trial." *United States v. Kellum*, 372 F.3d 1141, 1146 (9th Cir. 2004) (quoting *United States v. Gonzalez*, 70 F.3d 1236, 1240 (11th Cir. 1995)).

Finally, Gambino-Ruiz contends that the district judge did not give sufficient weight to factors that favored adjustment. But nowhere have we mandated specific weighting for any factors in the holistic analysis required for acceptance of responsibility. Furthermore, we have said that so long as "the district court considered the defendant's objections and did not rest its decision on impermissible factors," a denial of the adjustment should be upheld even absent a specific explanation of the decision. *United States v. Mohrbacher*, 182 F.3d 1041, 1052 (9th Cir. 1999).

Gambino-Ruiz has not persuaded us that his was the rare circumstance where the adjustment for acceptance of responsibility is due after the defendant has proceeded to trial. Although he confessed his illegal status when he was most recently apprehended, he sought to suppress those inculpatory statements pre-trial. Apart from his pre-trial decisions, he continued to contest his guilt during trial by attempting to negate a key element of the offense, namely his alienage. His motive at trial was clearly beyond merely

---

right to a jury trial. Instead, he considered the choice of proceeding and Gambino-Ruiz's position in the proceeding as undermining the claim that Gambino-Ruiz went to trial only to preserve legal challenges. Even where the judge "express[es] some frustration" at a defendant's insistence on going to trial, the judge may deny the adjustment if he "specifically state[s] that he was not punishing [the defendant] for his decision to go to trial, but was instead basing his denial of the downward adjustment on the nature of the defense . . . ." *Id.* at 1052–53.

"preserv[ing] issues that do not relate to factual guilt." U.S.S.G. § 3E1.1 cmt. 2. We therefore affirm the district judge's denial of the acceptance-of-responsibility adjustment and Gambino-Ruiz's sentence.

## IV. CONCLUSION

The judgment of the district court, both as to conviction and as to sentence, is **AFFIRMED**.

LEE, Circuit Judge, concurring:

Judge Bybee's excellent opinion methodically lays out why Jose Gambino-Ruiz was inadmissible under 8 U.S.C. § 1182(a)(7) and thus subject to expedited removal under 8 U.S.C. § 1225(b)(1)(A)(i). And because his removal order was lawful, it was not "fundamentally unfair" and his collateral challenge under § 1326(d) fails. *See United States v. Palomar-Santiago*, 141 S. Ct. 1615, 1622 (2021).

I join the majority opinion but write separately to point out that Gambino-Ruiz's collateral attack under § 1326(d) fails for another reason: Even if we had concluded that the removal violated Gambino-Ruiz's due process rights, he has not established any prejudice. Our precedent on the prejudice requirement under § 1326(d)(3) has sown a great deal of confusion in recent years. We have on the books perhaps an accidental precedent that suggests an "inadvertent shift from an individualized prejudice inquiry to a presumption of prejudice for collateral attacks under 8 U.S.C. § 1326(d)." *United States v. Mangas*, 2022 WL 898594, at *2 (9th Cir. Mar. 28, 2022) (Lee, J., concurring). But even if we must follow this accidental precedent, we

should construe it narrowly and presume prejudice in only rare cases.

## I. We have traditionally required actual prejudice for a § 1326(d) collateral challenge but have carved out narrow exceptions.

To prevail on a § 1326(d) collateral challenge, an alien must show: "(1) that he exhausted all administrative remedies available to him to appeal his removal order, (2) that the underlying removal proceedings at which the order was issued 'improperly deprived [him] of the opportunity for judicial review' and (3) that 'the entry of the order was fundamentally unfair.'" *United States v. Ortiz–Lopez,* 385 F.3d 1202, 1203–04 (9th Cir. 2004) (per curiam) (quoting 8 U.S.C. § 1326(d)). A removal order is fundamentally unfair if "(1) [an alien]'s due process rights were violated by defects in the underlying deportation proceeding, and (2) he suffered prejudice as a result." *Id.* at 1204 (cleaned up) (quoting *United States v. Ubaldo-Figueroa,* 364 F.3d 1042, 1048 (9th Cir. 2004)). To establish prejudice, an alien "must demonstrate plausible grounds for relief from deportation." *United States v. Garcia-Martinez*, 228 F.3d 956, 963 (9th Cir. 2000).

Traditionally, our precedent has required aliens to show actual prejudice to mount a successful collateral challenge to a removal order under § 1326(d)(3). *See United States v. Leon-Leon*, 35 F.3d 1428, 1432 (9th Cir. 1994) (rejecting defendant's argument that "prejudice should be presumed," as "the alien has the burden of proving prejudice in such circumstances"); *Garcia-Martinez*, 228 F.3d at 964 (holding that the defendant "must demonstrate actual prejudice"). Indeed, the "only circumstance under which we suggested no showing of prejudice was necessary was 'when the

administrative proceedings were so flawed' that an effective judicial review of a deportation, which might otherwise have been prevented, would be foreclosed." *Leon-Leon*, 35 F.3d at 1431 (citation omitted).

We have since extended the presumption of prejudice beyond this narrow exception to removal orders for lawful permanent residents. For example, in *United States v. Ochoa-Oregel*, this court stated that "even if the government might have been able to remove [defendant] on other grounds through a formal removal proceeding, his removal on illegitimate grounds is enough to show prejudice." 904 F.3d 682, 685–86 (9th Cir. 2018); *see also United States v. Camacho-Lopez*, 450 F.3d 928, 930 (9th Cir. 2006).

Perhaps it made some sense to presume prejudice for lawful permanent residents because they typically enjoy more rights and due process protections than those who are here temporarily or unlawfully. Yet in *United States v. Valdivia-Flores*, we inadvertently—or so it seems—extended the presumption of prejudice to unlawful and *non*-permanent residents who lack any plausible basis for remaining in the country. 876 F.3d 1201 (9th Cir. 2017), *overruled on other grounds by Alfred v. Garland*, 64 F.4th 1025 (9th Cir. 2023) (en banc). Valdivia-Flores had unlawfully and repeatedly entered the United States after being deported. *Id.* at 1203–04. On his fourth try at illegal reentry, he "was charged with one count of attempted reentry of a removed alien in violation of 8 U.S.C. § 1326 . . . ." *Id.* at 1204. He then collaterally attacked his removal order. *Id.* at 1205. The court's opinion focused on whether Valdivia-Flores was deprived of his due process rights under § 1326(d)(2) and whether his state drug-trafficking conviction constituted an aggravated felony. *Id.* at 1205–10. The opinion then—in an almost afterthought—stated that

Valdivia-Flores was "prejudiced from his inability to seek judicial review for that removal." *Id.* at 1210. Apart from that single sentence, the opinion did not offer any analysis or even address whether Valdivia-Flores suffered actual prejudice—perhaps because the issue of prejudice was not fully briefed before the court. Nor did the court address the defendant's unlawful status or consider whether alternative grounds for removal would foreclose his ability to show prejudice. *See United States v. Martinez-Hernandez*, 932 F.3d 1198, 1205 n.2 (9th Cir. 2019) (distinguishing *Valdivia-Flores*).

Later decisions further muddled the already murky legal landscape. In *Martinez-Hernandez*, we appeared to walk away from *Valdivia-Flores*' seeming embrace of presumed prejudice*,* emphasizing that in appraising "fundamental unfairness" under § 1326(d) "the central issue for decision is whether a defendant was removed when he should not have been." *Martinez-Hernandez*, 932 F.3d at 1204. There, the defendants (who were here unlawfully) had been deported because their robbery convictions were considered "crimes of violence." *Id.* at 1202. They then tried entering the United States again and were convicted of illegal reentry under § 1326. They collaterally challenged their removal orders, contending that their robbery convictions no longer qualified as crimes of violence. *Id.* They relied on *Ochoa-Oregel* to argue that once they show error in the removal, the government cannot later argue that the defendants could have been removed on alternative grounds. *Id.* at 1204. This court, however, reasoned that *Ochoa-Oregel* presented a "fundamentally different" situation because the defendant there was a lawful permanent resident. *Id.* at 1204–05. In contrast, the defendants in *Martinez-Hernandez* were not denied procedural due process or removed on "'illegitimate

grounds'" because "the same convictions require removal under a different section of the *same statute* previously invoked." *Id.* at 1205 (emphasis added).

Given the existing tension within this array of cases, our court appears confused about whether prejudice should be presumed, and different panels in unpublished memorandum dispositions have reached divergent results. *Compare United States v. Reyes-Ruiz*, 747 F. App'x 496, 498 (9th Cir. 2018) (unpublished) (holding that there is no presumption of prejudice when the defendant lacked "any lawful status in the United States at the time he was first removed") *with Mangas*, 2022 WL 898594, at *2 (unpublished) (ruling that "Mangas's removal order was fundamentally unfair under our precedent of presumed prejudice.").

\* \* \* \* \*

So where does this leave us? One approach is to treat the accidental precedent in *Valdivia-Flores* as non-binding. But our precedent on accidental precedent is almost as hazy as our presumed prejudice jurisprudence. So if we must apply *Valdivia-Flores*, we should read it very narrowly based on its unique facts and hew to our traditional view that a defendant must generally show actual prejudice for Section 1326(d) collateral challenges. And the significant differences between this case and *Valdivia-Flores* warrant rejecting a presumption of prejudice here.

## II. This court has sometimes seemingly refused to follow "accidental" precedents.

It would not be unreasonable to believe that *Valdivia-Flores*' single-sentence endorsement of presumed prejudice should have limited precedential value. We have noted that "[w]here it is clear that a statement is made *casually and*

*without analysis*," or "where the statement is *uttered in passing without due consideration of the alternatives* . . . it may be appropriate to re-visit the issue in a later case." *United States v. Johnson*, 256 F.3d 895, 915 (9th Cir. 2001) (en banc) (Kozinski, J., concurring) (emphasis added); *see also V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1232, n.1 (9th Cir. 2007) (citing *Johnson*, 256 F.3d at 915).

In a similar vein, we have repeatedly stressed that "[p]rior precedent that does not 'squarely address' a particular issue does not bind later panels on the question." *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (quoting *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993)); *see also id.* ("[C]ases are not precedential for propositions not considered, or for matters that are simply assumed." (cleaned up)); *United States v. Cassel*, 408 F.3d 622, 633 n.9 (9th Cir. 2005) (noting that a prior case which does not "raise or consider the implications" of a legal proposition "does not constrain our analysis").

*Valdivia-Flores* marked a notable departure—with no explanation—from this court's longstanding view that defendants must show actual prejudice to satisfy the "fundamental[] unfair[ness]" requirement of § 1326(d)(3). *See Garcia-Martinez*, 228 F.3d at 964; *see also Leon-Leon*, 35 F.3d at 1431; *United States v. Proa-Tovar*, 975 F.2d 592, 595 (9th Cir. 1992) (en banc).   Far from "squarely address[ing]" the issue, *Valdivia-Flores* "simply assumed," *Kirilyuk*, 29 F.4th at 1134 (cleaned up), that a non-citizen is prejudiced when his removal is not supported by its asserted basis, *Valdivia-Flores*, 876 F.3d at 1210.   This may be reason enough to render *Valdivia-Flores*'s precedential value suspect.

On the other hand, the cases casting doubt on the vitality of accidental precedent may in fact be merely addressing dicta.**[1]** And *Valdivia-Flores*'s presumption of prejudice was not a frolic-and-detour dictum because it was central to the case's outcome.

## III. We should read *Valdivia-Flores* very narrowly based on its unique facts.

If we treat *Valdivia-Flores*'s accidental precedent as binding, we should not read it expansively, as urged by Gambino-Ruiz. Rather, we should confine an accidental precedent to the specific facts of that case and limit its holding to the apparent rationale that we can reasonably glean from that ruling.

In *Valdivia-Flores*, it appears that the court presumed prejudice based in part upon a lack of notice to the defendant about the reason for removal: The government had

---

[1] Different panels have cast Judge Kozinski's formulation in *Johnson* in distinct lights. *See, e.g.*, *Pakootas v. Teck Cominco Metals, Ltd.*, 452 F.3d 1066, 1082 (9th Cir. 2006) (citing Judge Kozinski's observation for the proposition that a statement in the relevant case "bears the hallmarks of dicta"); *see also United States v. Ingham*, 486 F.3d 1068, 1079 n.8 (9th Cir. 2007) (casting Judge Kozinski's formulation as a delineation of dicta); *United States v. Arizona*, 641 F.3d 339, 385 n.17 (9th Cir. 2011), *aff'd in part, rev'd in part and remanded*, 567 U.S. 387 (2012) (Bea, J., concurring in part and dissenting in part) (framing a prior panel's statement about the INA's civil provisions as dicta); *but cf. V.S. ex rel. A.O.*, 484 F.3d at 1232 n.1 (quoting *Johnson*, 256 F.3d at 915) ("[W]e are not bound by a *holding* 'made casually and without analysis . . . .'" (emphasis added)); *United States v. Garcia-Villegas*, 575 F.3d 949, 951–52 (9th Cir. 2009) (Graber, J., concurring in part and specially concurring in part) (citing *V.S. ex rel. A.O.,* 484 F.3d at 1232 n.1) (recognizing an "exception" to the rule that a panel is bound by prior panel decisions that applies when the "*holding* is 'made casually and without analysis'" (emphasis added)).

misclassified the defendant's felony conviction that served as the predicate for removal. The government could not remedy this error by later charging him with another basis for removal from a *different* statute because the defendant never had notice of that new ground for removal. But if the government had earlier charged him with that alternative basis for removal, the defendant would have had notice and could not benefit from a presumption of prejudice. *See Mangas*, 2022 WL 898594, at *3. Similarly, a defendant cannot invoke presumed prejudice if his "conviction qualifies for removability under a different section of the *same* statute (*i.e.*, the INA)." *Id.*; *see also Martinez-Hernandez,* 932 F.3d at 1205 (finding no due process violation because "the same convictions require removal under a different section of the *same statute* previously invoked"). There is no notice problem in that situation because the defendant has already been advised that his conviction would be the basis for his removal, though under a different section of the same statute, the INA.

Put another way, we should not presume prejudice if (i) the government had already charged the defendant with another statutory basis for removal (because he had notice of the alternative reason for removal), *or* (ii) the defendant's conviction serves as the predicate for removal under a different section of the same statute (because he again had sufficient notice). A comparison of the facts of *Valdivia-Flores* and our case highlights why there is no notice problem—and thus no presumption of prejudice—here. In *Valdivia-Flores*, the defendant was being removed for an aggravated felony, but it turned out that his state drug-trafficking conviction did not constitute an aggravated felony. *See* 876 F.3d at 1210. The government had not charged him with any other basis for removal, and thus the

court may have presumed prejudice, given the lack of notice of the government's possible new rationale for removing him (*i.e.*, he was in the United States unlawfully).

In contrast here, Gambino-Ruiz argues that he is not removable as charged under § 1182(a)(7) because he was not inadmissible as a noncitizen who lacked valid entry documents "at the time of application for admission."  But another section from the same statute—§ 1182(a)(6)[2]— makes Gambino-Ruiz inadmissible.  The evidence required to show inadmissibility under § 1182(a)(6) largely coincides with that of § 1182(a)(7), and indeed, Gambino-Ruiz has conceded his removability under § 1182(a)(6)(A)(i).  So we should not presume prejudice because another statutory provision in the same statute provided sufficient notice for the basis of his removal.

Our decision in *Martinez-Hernandez* also supports reading *Valdivia-Flores* along these lines.  First, by emphasizing the "broad constitutional protections" and important legal safeguards that lawful permanent residents enjoy, *Martinez-Hernandez* rightly confined *Ochoa-Oregel* to cases involving lawful permanent residents invalidly removed, who inherently lack "meaningful opportunity to contest" their removal order when the government later supplies an alternative basis for removal.  *See Martinez-Hernandez*, 932 F.3d 1204–05 (quoting *Ochoa-Oregel*, 904 F.3d at 685).  The same cannot be said for defendants like Gambino-Ruiz, who not only lack the protections given to lawful permanent residents but also cannot show that they

---

[2]  Section 1182(a)(6) states: "An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General is inadmissible."

are prejudiced by a lack of notice of an alternative justification for their removal.

Second, *Martinez-Hernandez* distinguished *Valdivia-Flores* by explaining that the "government did not suggest that the *conviction* provided a ground for removal under another statutory provision." *Id.* n.2 (emphasis added). That is, in *Valdivia-Flores*, the only other basis for removability was the defendant's unlawful *status*. But that *post hoc* justification for removability (unlawful status) was distinct from the basis for defendant's removability as charged (an aggravated felony conviction). In *Martinez-Hernandez,* on the other hand, the predicate for the defendants' removability was the *same underlying felony convictions*— no matter if those convictions constituted an aggravated felony "crime of violence" or an aggravated felony "theft offense." *Cf. Id.* at 1205 ("The only issue before us today is whether those convictions justified the Defendants' removals."). Likewise here, the basis for Gambino-Ruiz's removal is the same—unlawful presence in the United States under §§ 1182(a)(6) or 1182(a)(7).

We have stressed that "the central issue for decision is whether a defendant was removed when he should not have been." *Id.* at 1204. That is not the case here. Gambino-Ruiz's expedited removal did not violate his due process rights under 8 U.S.C. § 1326(d), and in any event, he has also failed to show actual prejudice from his removal through expedited proceedings.